UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID COUCH, | Case No. 1:14-cv-0010 LJO JLT |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE |
| v. | |
| MORGAN STANLEY & CO., INC., et al., | (Docs. 6 & 13) |
| Defendants. | |

Now before the Court is Defendants Morgan Stanley & Co., Inc. and Morgan Stanley Smith Barney's (collectively "Morgan Stanley's") motion to dismiss or, in the alternative, motion to strike. Plaintiff David Couch ("Mr. Couch") has opposed the motion, and Morgan Stanley has filed a reply. The Court has reviewed the parties' submissions, and for all the reasons set forth below GRANTS IN PART and DENIES IN PART Morgan Stanley's motion to dismiss.

I.     PRELIMINARY STATEMENT

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is simply unable to devote inordinate time and resources to individual cases and matters. Given

1

the shortage of district judges and court staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and their counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to further accommodate the parties and this action.

The parties are required to consider consenting to conducting all further proceedings before a U.S. Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases. Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial in order to accommodate criminal matters. Civil trials are no longer rescheduled to a later date if for any reason Judge O'Neill becomes unavailable on the original date set for trial. Moreover, the Fresno Division of the Eastern District of California randomly and without notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. Unless the parties consent to proceed before a Magistrate Judge, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## II. BACKGROUND

### A. Mr. Couch's Allegations

#### 1. Mr. Couch is Employed by Morgan Stanley

In 2007, Morgan Stanley recruited Mr. Couch to join its office in Bakersfield, California as a financial advisor. Morgan Stanley's offer was conditioned on Mr. Couch agreeing to two terms. First, Mr. Couch's existing clients and accounts were to be transferred to Morgan Stanley, where Mr. Couch would continue to service the business. Second, if at any point Mr. Couch's employment with Morgan Stanley ended, Mr. Couch could not initiate contact with a Morgan Stanley client for one year, even if the client was one of Mr. Couch's original clients ("the Non-Compete Clause"). Mr. Couch agreed to the terms and joined Morgan Stanley in or around September 2007.

As part of Mr. Couch's compensation, Morgan Stanley agreed to pay Mr. Couch two bonuses, one for $639,128 and another for $43,228.53. The bonuses were to be paid over the course of several years and were secured by two promissory notes. The promissory notes effectively allowed Morgan Stanley to recover the bonuses if at any point Mr. Couch's employment was terminated.

### 2. Mr. Couch's Political Activity

Mr. Couch served as a member of the Bakersfield City Council, and in the months leading to his decision to join Morgan Stanley, Mr. Couch informed the company that he intended to run for re-election to the Bakersfield City Council and to run for the Kern County Board of Supervisors. Rachell Fanucchi ("Ms. Fanucchi"), who later became Mr. Couch's immediate supervisor at Morgan Stanley, indicated that she did not think this would present a problem for Morgan Stanley. She presented Mr. Couch with an "Outside Activity Request" agreement, which approved Mr. Couch being a city council member and a county supervisor, subject to certain conditions.

### 3. Mr. Couch's Employment is Terminated

In 2011 and early 2012, Mr. Couch had a series of conversations with Ms. Fanucchi regarding his plan to run for the Kern County Board of Supervisors. Ms. Fanucchi reiterated that this should not be a problem, so long as Mr. Couch entered a request to engage in this activity on the Morgan Stanley OBI system ("the OBI system"). Mr. Couch complied and entered a request on the OBI system on or around February 15, 2012.

Mr. Couch was elected to the Kern County Board of Supervisors on or around June 6, 2012. Morgan Stanley's legal department asked Mr. Couch to have an authorized individual from the Kern County Board of Supervisors sign a form letter providing assurances that, among other things, "[t]he [Kern County Board of Supervisors] is aware of no law, rule, regulation, or policy that would preclude Morgan Stanley Smith Barney or its affiliates from doing business with the [Kern County Board of Supervisors] and its affiliates as a result of [Mr. Couch's] position [as a member of the Kern County Board of Supervisors]." (Doc. 1 at 7.) Approximately one month after being elected, Mr. Couch was informed by counsel for the Kern County Board of Supervisors that Kern County would not execute Morgan Stanley's letter.

On or around December 20, 2012, Morgan Stanley notified Mr. Couch that certain conflicts could not be resolved to Morgan Stanley's satisfaction and that by December 28, 2012, Mr. Couch had to decide whether he wanted to work for Morgan Stanley or to serve as a member of the Kern County Board of Supervisors. Less than a month later, on January 16, 2013, Mr. Couch was terminated as a Morgan Stanley financial advisor. The explanation provided by Morgan Stanley in a Form U5 states

the reason for Mr. Couch's termination as follows: "separation from the firm in light of individual's county supervisor position." (Id. at 8.)

On or around September 19, 2013, Morgan Stanley filed a claim in arbitration relating to the repayment of the promissory notes. The case was dismissed following Mr. Couch's full payment to Morgan Stanley of the amounts due.

### B.     Procedural History

Mr. Couch initiated this employment action against Morgan Stanley on January 2, 2014. Mr. Couch presents five causes of action in his complaint: (1) violation of California Labor Code section 1101(a); (2) violation of California Labor Code section 1102; (3) violation of California Labor Code section 98.6; (4) request for declaratory relief; and (5) violation of California Business & Professions Code section 17200 ("the UCL").

On January 27, 2014, Morgan Stanley moved to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, to strike Mr. Couch's first three causes of action pursuant to California's anti-SLAPP statute,[1] Cal. Code Civ. Proc. § 425.16. Morgan Stanley subsequently amended its motion on February 25, 2014. Mr. Couch then filed an opposition on March 20, 2014, and Morgan Stanley filed a reply on March 27, 2014. The Court deemed this matter suitable for decision without oral argument, vacated the hearing, and took the matter under submission on the pleadings pursuant to Local Rule 230(g).

## III.     LEGAL STANDARDS

### A.     Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is to be "presumed that a cause lies outside this limited jurisdiction." Kokkonen v. Guardian Life Ins. of America, 511 U.S. 375, 377 (1994). The party invoking federal jurisdiction thus carries the burden of establishing its existence. Id.

///

---

[1] SLAPP is the acronym for "strategic lawsuit against public participation." Albanese v. Menounos, 218 Cal. App. 4th 923, 926 n.1 (Ct. App. 2013).

4

A challenge pursuant to Rule 12(b)(1) may be facial or factual. White v. Lee, 227 F.3d 1214, 1212 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. Wolfe, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the [very] truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air, 373 F.3d at 1039. In resolving this type of challenge, the court "need not presume the truthfulness of the plaintiff's allegations." Id. (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Id. (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

**B.**    **Rule 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant

has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A complaint] must contain sufficient allegations of underlying facts to give fair notice . . . [to] the opposing party . . . [and] must plausibly suggest an entitlement to relief").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles, 648 F.3d 986, 991 (9th Cir. 2011). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Nor is the court required to accept as true allegations that are conclusory or the product of unwarranted deductions of fact. Id. Finally, if the court concludes that dismissal is warranted under Rule 12(b)(6), the dismissal should be with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

**C.  Anti-SLAPP**

California's anti-SLAPP statute, California Code of Civil Procedure section 425.16, provides a procedure for the early dismissal of lawsuits brought primarily to chill the exercise of protected free speech rights. Fahlen v. Sutter Central Valley Hospitals, 58 Cal. 4th 655, 665 n.3 (2014). The statute provides, in relevant part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).

When evaluating a motion to strike under the anti-SLAPP statute, a court is required to engage in a two-part inquiry. Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 819 (2011). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Equilon Enterprises v. Consumer Cause, Inc., 29 Cal. 4th 53,

67 (2002). The defendant has the burden to demonstrate that the acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the [anti-SLAPP] statute." Id. (citation and internal quotation marks omitted). If the court finds such a showing has been made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. City of Cotati v. Cashman, 29 Cal. 4th 69, 76 (2002). The plaintiff must "state and substantiate a legally sufficient claim. Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Oasis West Realty, 51 Cal. 4th at 820 (internal quotation marks and citation omitted).

IV.     DISCUSSION

    A.     Motion to Dismiss

        1.     First, Second, and Third Causes of Action – Violations of California Labor Code Sections 1101(a), 1102, and 98.6

In his first, second, and third causes of action, Mr. Couch claims that Morgan Stanley violated California Labor Code sections 1101(a), 1102, and 98.6 because Morgan Stanley effectively precluded Mr. Couch from engaging in protected political activity. Morgan Stanley now moves to dismiss these three causes of action on the ground that Mr. Couch did not file a timely complaint with the California Labor Commissioner regarding these claims and therefore Mr. Couch failed to exhaust administrative remedies prior to filing suit.

California Labor Code section 98.7(a) provides, in relevant part: "Any person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation." Prior to 2014, courts disagreed as to whether this language required a plaintiff to exhaust administrative remedies prior to bringing suit for violations of the California Labor Code by filing a complaint with the California Labor Commissioner. Most federal district courts in California, including this one, concluded that it did. See, e.g., Oyarzo v. Tuolumne Fire Dist., 955 F. Supp. 2d 1038, 1101-02 (E.D. Cal. 2013); Ferretti v. Pfizer Inc., 855 F. Supp. 2d 1017, 1023-24 (N.D.

Cal. 2012); Vasile v. Flagship Fin. Group, LLC, Case No. 2:12-cv-02912-KJM-CKD, 2013 U.S. Dist. LEXIS 117301, at *16 (E.D. Cal. Aug. 19, 2013); Warren v. City of Barstow, No. EDCV 08-00405-SGL (OPx), 2008 U.S. Dist. LEXIS 105228, at *2-3 (C.D. Cal. Dec. 15, 2008). A few federal district courts concluded that it did not. See, e.g., Dowell v. Contra Costa Cnty., 928 F. Supp. 2d 1137, 1153 (N.D. Cal. 2013).

The key point of disagreement among the courts has been the import of the California Supreme Court's decision in Campbell v. Regents of Univ. of California, 35 Cal. 4th 311 (2005). In Campbell, the California Supreme Court held that the plaintiff's claim for retaliatory discharge under California Labor Code section 1102.5 was properly dismissed on demur because the plaintiff failed to exhaust the defendant's internal complaint resolution process. Id. at 319. In doing so, the court disagreed with the plaintiff's argument that section 1102.5's silence on the issue of exhaustion of administrative remedies meant that exhaustion of the defendant's internal complaint process was not required prior to brining a civil action. Id. at 329-30. The court noted the "equivocal" nature of the statute's legislative history on the issue: the bill's author apparently intended the bill to abrogate any exhaustion requirement, but the legislature seemed to have rejected that intent. Id. at 331. The court concluded that "absent a clear indication of legislative intent, [courts] should refrain from inferring a statutory exemption from [the] settled rule requiring exhaustion of administrative remedies." Id. at 333.

Courts that have concluded that proper exhaustion requires the filing of a complaint with the California Labor Commissioner have extended Campbell's reasoning regarding exhaustion of internal administrative remedies to section 98.7. Specifically, these courts reason that when a statute such as section 98.7 provides an administrative remedy, and the legislature is silent as to whether exhaustion of that remedy is required prior to filing a civil action, courts will generally presume that exhaustion of the remedy is indeed required. In contrast, courts that have concluded that proper exhaustion does *not* require the filing of a complaint with the California Labor Commissioner confine Campbell's holding to internal administrative remedies. See, e.g., Turner v. City & County of San Francisco, 892 F. Supp. 2d 1188, 1200 (N.D. Cal.2012). These courts note that the legislature used permissive, not mandatory, language in section 98.7 and therefore section 98.7 should not be viewed as an exclusive or mandatory administrative remedy. Id. at 1203.

In 2014, however, the legislative backdrop changed.  The California state legislature adopted California Labor Code section 244, which became effective January 1, 2014.  Section 244(a) makes it clear that a plaintiff seeking to enforce his rights under any section of the Labor Code need *not* exhaust administrative remedies prior to bringing suit if that section does not expressly require it.  Cal. Labor Code § 244(a).  In addition, the legislature adopted California Labor Code section 98.7(g), which also became effective as of January 1, 2014.  Section 98.7(g) provides: "In the enforcement of this section, there is no requirement that an individual exhaust administrative remedies or procedures."  Cal. Labor Code § 98.7(g).

In light of these legislative changes, district courts that have since revisited this issue have held that a plaintiff filing suit for violations of the Labor Code need not exhaust administrative remedies by filing a complaint with the California Labor Commissioner.  See Stone v. Walgreen Co., No. 13-cv-2838-W(DHB), 2014 U.S. Dist. LEXIS 42303, at *7-10 (S.D. Cal. Mar. 26, 2014); Howard v. Contra Costa County, Case No. 13-cv-3626 NC, 2014 U.S. Dist. LEXIS 26908, at *55-59 (N.D. Cal. Feb. 28, 2014); Melgar v. CSK Auto, Inc., Case No. C-13-3769 EMC, 2014 U.S. Dist. LEXIS 16639, at *13-16; Gonzalez v. City of McFarland, Case No. 1:13-cv-0086 JLT, 2014 U.S. Dist. LEXIS 9259, at *4-8 (E.D. Cal. Jan. 24, 2014).  This Court finds these cases persuasive.  With the adoption of section 244, the argument that Campbell should be extended and applied to section 98.7 has been undermined.  By adopting section 244, the legislature has clearly spoken on the issue and has affirmed the interpretation of section 98.7 espoused by those courts which have held that the administrative remedies provided by section 98.7 are *not* mandatory. [2]  Accordingly, Morgan Stanley's motion to dismiss Mr. Couch's first, second, and third causes of action is DENIED.

## 2.     Fourth Cause of Action – Declaratory Relief

In his fourth cause of action, Mr. Couch seeks a judicial determination that the Non-Compete Clause is void and unenforceable pursuant to California Business and Professions Code section 16600.  Section 16600 states, in relevant part: "[E]very contract by which anyone is restrained from engaging

---

[2] Retroactive application of section 244 is not an issue.  See Stone, 2014 U.S. Dist. LEXIS 42303, at *9; Howard, 2014 U.S. Dist. LEXIS 26908, at *58; Melgar, 2014 U.S. Dist. LEXIS 16639, at *14-16; Gonzalez, 2014 U.S. Dist. LEXIS 9259, at *5-7.  The Court finds Morgan Stanley's argument to the contrary unpersuasive.

1 in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Mr. Couch contends that the Non-Compete Clause violates section 16600 because the clause prohibits Mr. Couch from soliciting Morgan Stanley clients, including the clients that belonged to Mr. Couch before he joined Morgan Stanley.

Morgan Stanley moves to dismiss this cause of action due to lack of subject matter jurisdiction. Morgan Stanley maintains that, by its own terms, there is no possibility that the Non-Compete Clause could cause Mr. Couch harm now or in the future. Morgan Stanley contends that in the absence of any threat of present or future harm, there is no actual case or controversy and, as a result, Mr. Couch lacks Article III standing to pursue declaratory relief for this matter.

The Court agrees with Morgan Stanley. In order to satisfy Article III standing, a plaintiff must show, among other things, "an injury that is actual or imminent;" the alleged injury cannot be merely "conjectural or hypothetical." Clark v. City of Lakewood, 259 F.3d 996, 1007 (9th Cir. 2001); see also Multistar Indus. v. United States Dep't of Transportation, 707 F.3d 1045, 1054 (9th Cir. 2013)) (listing the elements of Article III standing). In the context of injunctive or declaratory relief, this means that "the plaintiff must demonstrate a real or immediate threat of an irreparable injury." Clark, 259 F.3d at 1007. If the plaintiff cannot make this showing, the claim in dispute is subject to dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).

The Non-Compete Clause does not pose a real or immediate threat of an irreparable injury to Mr. Couch. By its own terms, the Non-Compete Clause expired (1) once Mr. Couch repaid all money owed to Morgan Stanley under the promissory notes; or (2) one year after Mr. Couch's termination of employment. (Doc. 1 ¶ 10, Ex. A.) *Both* events have occurred already. Moreover, there is nothing to suggest that the Non-Compete Clause will ever become effective again. Therefore, because the Non-Compete Clause has expired and poses no threat of future harm, Mr. Couch lacks Article III standing to pursue his fourth cause of action.

Mr. Couch concedes that the Non-Compete Clause has expired but argues that his fourth cause of action should not be dismissed because he may still request declaratory relief in connection with his fifth cause of action (violation of the UCL). This argument is unpersuasive. Mr. Couch's fifth cause

of action under the UCL seeks damages for allegations of purely *past* wrongdoing; it does not seek to affect or proscribe any future conduct. (See infra Section IV.A.3.) Declaratory relief, however, is an "inappropriate mechanism to address allegations of past harm." Fieger v. Ferry, 471 F.3d 637, 644 n.3 (6th Cir. 2006). It is "meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008) (citations omitted). Mr. Couch's fifth cause of action, therefore, does not support a separate claim for declaratory relief.

### 3.  Fifth Cause of Action – Violation of the UCL

In his fifth cause of action, Mr. Couch alleges that Morgan Stanley's use of the Non-Compete Clause formed part of an unlawful business practice in violation of the UCL. Mr. Couch alleges that: (1) Morgan Stanley required Mr. Couch to transfer his existing clients to Morgan Stanley; (2) after Morgan Stanley terminated Mr. Couch's employment, Morgan Stanley distributed Mr. Couch's clients to other Morgan Stanley financial advisors; (3) Morgan Stanley used the illegal Non-Compete Clause to prevent Mr. Couch from soliciting and reacquiring his original clients; and (4) Morgan Stanley was thereby unjustly enriched.

Mr. Couch seeks as his remedy the disgorgement of all money Morgan Stanley received from Mr. Couch's original clients after his termination from Morgan Stanley on January 16, 2013. Morgan Stanley now moves to dismiss this cause of action on the ground that Mr. Couch seeks a remedy that is unavailable to him under the UCL as a matter of law.

While the scope of the UCL is "broad" and "sweeping," its remedies are "generally limited to injunctive relief and restitution." Cel-Tech Communications v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 179-80 (1999). Restitution in the context of the UCL generally can take two forms. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149-50 (2003). First, restitution may entail the return of money or property that was once within the plaintiff's actual possession. Id. Second, restitution may entail the return of money or property that the plaintiff has a "vested interest" in. Id. "A vested interest is one that is unconditional, absolute, and not contingent." Pegasus Satellite TV, Inc. v. DirecTV, Inc., 318 F. Supp. 2d 968, 979 (C.D. Cal. 2004) (citing Black's Law Dictionary). It does depend on an uncertain future event. Id.

1   Here, Mr. Couch fails to allege facts showing that the disgorgement he seeks is restitutionary
2   in nature. There is no indication that Mr. Couch has a vested (i.e., absolute or automatic) interest in
3   the money Morgan Stanley received from Mr. Couch's original clients after his termination. Rather,
4   Mr. Couch appears to premise his "right" to this money on the logic that had it not been for the Non-
5   Compete Clause, he could have solicited his original clients, he could have reacquired their business,
6   and the money earned by Morgan Stanley could have been his instead. This amounts to nothing more
7   than an expectancy interest, not a vested one. Damages of this nature (i.e., non-restitutionary) are not
8   recoverable under the UCL. See Korea Supply, 29 Cal. 4th at 1151.

Mr. Couch's arguments in opposition are unavailing. Mr. Couch argues that Morgan Stanley's position improperly relies on two facts that are not found in his complaint: (1) that Mr. Couch did not make investing decisions for his original clients while at Morgan Stanley; and (2) that Mr. Couch did not sell products to the clients that resulted in profits. It does not. Completely disregarding these two "facts," it still remains that Mr. Couch fails to allege sufficient facts showing that the disgorgement he seeks is restitutionary in nature.

Mr. Couch also contends that merely demanding an improper remedy is not a proper basis for dismissal under Rule 12(b)(6). As support for his position, Mr. Couch cites the following language:

> A Rule 12(b)(6) motion will not be granted merely because a plaintiff requests a remedy to which he or she is not entitled. It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted.

Massey v. Banning Unified Sch. Dist., 256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003) (internal brackets, citations, and quotation marks omitted). Mr. Couch then attempts to analogize this case to Yokohama Rubber Co. v. South China Tire & Rubber Co., 04-1866-GHK(PLAx), 2004 U.S. Dist. LEXIS 30927 (C.D. Cal. Oct. 19, 2004), wherein the court declined to dismiss the counter-plaintiff's claim under the UCL. The court held that although the counter-plaintiff had improperly requested damages under the UCL, dismissal of the claim was unwarranted since the facts of the complaint showed that the counter-plaintiff could still obtain an alternative remedy that was not specifically alleged: an injunction barring the counter-defendant from enforcing an invalid patent. Id. at *14.

///

Contrary to Mr. Couch's suggestion, the defect in Mr. Couch's UCL claim is not simply that he demands an improper remedy. Rather, it is that Mr. Couch fails to show that there is *any* remedy at all. The only remedies available to Mr. Couch under the UCL are injunctive relief and restitution. See Cel-Tech Communications, 20 Cal. 4th at 179. Yet Mr. Couch does not appear to be entitled to either remedy. As explained above, the damages Mr. Couch seeks are not restitutionary in nature. Nor does the complaint suggest that injunctive relief might be warranted. Therefore, because the Court cannot "ascertain from the face of the complaint that *some* relief can be granted." Massey, 256 F. Supp. 2d at 1092 (emphasis added), dismissal of this claim is appropriate. See Port Authority v. Arcadian Corp., 189 F.3d 305, 312 (3d Cir 1999) ("Rule 12(b)(6) . . . is designed to screen out cases where a complaint states a claim based upon a wrong for which there is clearly *no* remedy[.])" (internal quotation marks and citations omitted) (emphasis added).

### B. Anti-SLAPP Motion to Strike

The defendant seeking to strike a plaintiff's cause of action under the anti-SLAPP statute has the burden of showing that the challenged cause of action "aris[es] from" protected activity. Equilon, 29 Cal. 4th at 67. This means "that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." City of Cotati, 29 Cal. 4th at 78 (citation omitted) (emphasis in original). "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." Id. (citations omitted) (emphasis in original).

Morgan Stanley fails to meet this burden. In moving to strike Mr. Couch's first, second, and third causes of action, Morgan Stanley focuses on the form letter it sent to the Kern County Board of Supervisors. Morgan Stanley contends that it engaged in protected activity when it sought assurances in the letter from the Kern County Board of Supervisors that Mr. Couch's election to the Board would not create conflicts that would preclude Morgan Stanley from doing business with the Board. But the mere fact that Morgan Stanley sent this letter and inquired into these matters is not what Mr. Couch's first, second, and third causes of action are, at their core, about. Rather, from what the Court's is able to discern from the complaint, the gravamen of these causes of action appears to be one step removed, namely that (1) Morgan Stanley adopted an unofficial policy requiring the Board to provide up-front

assurances that Mr. Couch's position on the Board would not create any conflicts of interests with his position at Morgan Stanley; (2) this policy essentially precluded Mr. Couch from serving on the Board while employed at Morgan Stanley; and (3) Morgan Stanley forced Mr. Couch to choose between the two jobs. In other words, the act underlying Mr. Couch's causes of action is not the fact that Morgan Stanley *communicated* with the Board regarding conflicts of interests; it is the allegation that Morgan Stanley *adopted an employment policy* that precluded Mr. Couch from serving on the Board. Morgan Stanley has not explained why *this* act constitutes protected activity.

To be sure, Morgan Stanley's letter to the Board is relevant to Mr. Couch's causes of action; it forms the backdrop of this case. However, the fact that the letter forms the backdrop of this case does not necessarily mean that this case "arises from" protected activity. See Episcopal Church Cases, 45 Cal. 4th 467, 477-78 (2009) ("[T]hat a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such. . . . The additional fact that protected activity may lurk in the background – and may explain why the rift between the parties arose in the first place – does not transform a . . . dispute into a SLAPP suit.") (internal quotation marks omitted); Gallimore v. State Farm Fire & Casualty Ins. Co., 102 Cal. App. 4th 1397-1400 (Ct. App. 2002) (explaining that the critical issue on an anti-SLAPP motion is the *nature of the act* underlying the plaintiff's causes of action, not the *evidence* that the plaintiff will rely on to prove that act).

Accordingly, because Morgan Stanley fails to show that the challenged causes of action "arise from" protected activity, Morgan Stanley's anti-SLAPP motion is DENIED.

## V.   CONCLUSION AND ORDER

In accordance with the above, the Court:

1. DISMISSES Mr. Couch's fourth and fifth causes of action with leave to amend;
2. DENIES Morgan Stanley's motion to dismiss or, in the alternative, motion to strike in all other respects; and
3. INSTRUCTS Mr. Couch to file any amended complaint he intends to file in response to this order by no later than May 9, 2014. Mr. Couch is reminded of his obligations under Federal Rule of Civil Procedure 11 and is forewarned that he must use his best efforts within the confines of the facts and law if he intends to file an amended complaint. It is

unlikely that Mr. Couch will be afforded another opportunity to amend his complaint with respect to this matter.

IT IS SO ORDERED.

Dated: **April 18, 2014**        **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE