R. Rex Parris Esq. (SBN 96567)
rrparris@rrexparris.com
Alexander R. Wheeler, Esq. (SBN 239541)
awheeler@rrexparris.com
Patricia K. Oliver, Esq. (SBN 193423)
poliver@rrexparris.com
**R. REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, CA 93534
Telephone: (661) 949-2595
Facsimile:  (661) 949-7524

Deborah A. Klar, Esq. (SBN 124750)
dklar@dklarlaw.com
**KLAR & ASSOCIATES**
2934 1/2 Beverly Glen Circle, Suite 761
Bel Air, California 90077
Telephone:  (310) 858-9500

Attorneys for Plaintiff
DAVID COUCH

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| DAVID COUCH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MORGAN STANLEY SMITH BARNEY,<br>LLC<br><br>　　　　Defendants. | CASE NO.:  1:14-cv-00010-LJO-JLT<br><br>FIRST AMENDED COMPLAINT |

Plaintiff David Couch allege as follows:

#### THE PARTIES

1.　　Plaintiff David Couch ("Couch or "Plaintiff") is a former employee of Morgan Stanley & Co., Incorporated and Defendant Morgan Stanley Smith Barney, LLC (collectively "Morgan Stanley"), resident in the Morgan Stanley Office located at 9100 MING Avenue, Suite 205 Bakersfield, CA 93311.

2.      Defendant Morgan Stanley & Co., Incorporated ("MS&Co."), at all times material hereto, was a Delaware limited liability corporation, registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC") and with the State of California. MS&Co. is not licensed to do business in the State of California.

3.      Defendant Morgan Stanley Smith Barney, LLC ("MSSB" or "Defendant"), at all times material hereto was, and is a Delaware corporation, registered as a broker-dealer with the SEC and the State of California. Plaintiff is informed and believes that on or about June 1, 2009, Citigroup contributed its Smith Barney Division ("Smith Barney") to Morgan Stanley Smith Barney Holdings, LLC ("MSSBH"), a joint venture owned by Citigroup and MS&Co. At the same time, MS&Co. contributed its Global Wealth Management Group to MSSBH. The joint venture owns MSSB. MSSB's principal place of business is located at 1585 Broadway, New York, New York 10036. MSSB is licensed to do business in California.

### JURISDICTION

4.      Jurisdiction of the United States District Court for the Eastern District of California for the above-captioned adversary proceeding is founded on 28 U.S.C. §§ 1332(a)(1) in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

### VENUE

5.      Venue of this action is proper under 28 U.S.C. § 1391 in that the Defendant corporations reside in the Eastern District of California because its contacts in the Eastern District of California are sufficient to subject Defendant to personal jurisdiction in the Eastern District if the Eastern District were a separate State.

### FACTUAL ALLEGATIONS

**A.**      **Couch Is Employed By MS&Co.**

6.      On or about August 30, 2007, Couch came to work as a financial advisor at MS&Co. Prior to becoming employed by MS&Co., Couch enjoyed continuous employment in Bakersfield, California as a financial advisor with (i) Dean Witter Reynolds, Inc. ("Dean Witter") between 1988 and 1995; and (ii) Salmon Smith Barney, Inc. ("Smith Barney"), between 1995 and

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1   2007.   During his tenure at Morgan Stanley, Couch, in his capacity as a financial advisor,

2   primarily assisted clients with managed accounts (SMAs and UMAs), variable annuities, and

3   generally encouraged clients that want to trade equities to enroll in the Morgan Stanley Choice

4   Select program.   Couch also serviced the 401K plans of a few local businesses.

5        7.   Sometime in 2006, MS&Co. recruited Couch to join MS&Co. on the condition that

6   Couch would facilitate the transfer of the business and accounts of his existing clients to MS&Co.

7   ("Couch Clients") and thereafter continue to service the business of the Couch Clients at MS&Co..

8        8.   Couch resigned his position as a financial advisor with Smith Barney on or about

9   August 30, 2007.   The same day, he commenced work at MS&Co. and began the process of

10   facilitating the transfer of the business and accounts of the Couch Clients from Smith Barney to

11   MS&Co.

12        9.   Days after Couch arrived at MS&Co., MS&Co. presented Couch with a series of

13   pre-printed agreements, adhesive in nature, that MS&Co. had prepared, the terms of which were

14   all non-negotiable, offered to Couch on a take-it-or-leave-it basis as a condition of his employment

15   (or a condition of his continuing employment).   Those agreements are described in paragraphs 10

16   through 17 below.

17        10.   On or about September 4, 2007, Couch executed a "Financial Advisor Employment

18   Agreement" ("Employment Agreement"), a true and correct copy of which is annexed hereto as

19   Exhibit "A" and its terms incorporated herein by reference.   The Employment Agreement purports

20   to define "Trade Secrets" of MS&Co. in paragraph 2.1, *et seq.* to include all of the oral and written

21   information   (within Couch's custody and control immediately before he became employed at

22   MS&Co.) about the Couch Clients that transferred their accounts to MS&Co. ("Couch Client

23   Transferees").   Based on that definition of "Trade Secrets," pursuant to paragraph 3.2 of the

24   Employment Agreement, for a period of one year following Couch's termination as an MS&Co.

25   employee, Couch was prohibited from initiating any contact with any of clients he serviced while

26   at MS&Co., including the Couch Client Transferees.

27        11.   Paragraph 7 of the Employment Agreement expressly acknowledges that "statutory

28   employment claims" arising out of or relating to Couch's employment by MS&Co. are excluded

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

FIRST AMENDED COMPLAINT

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1   from arbitration.   The phrase "statutory employment claims" is nowhere defined in the

2   Employment Agreement.

3         12.    On or about September 4, 2007, Couch executed a Bonus Agreement in favor of

4   MS&Co. ("Bonus 1"), a true and correct copy of which is annexed hereto as Exhibit "B" and its

5   terms incorporated herein by reference.

6         13.    Pursuant to the Bonus 1, MS&Co. agreed to pay Couch a specific bonus amount on

7   September 12, 2008, September 12, 2009, September 12, 2010, September 12, 2011, September

8   12, 2012, September 12, 2013, September 12, 2014, September 12, 2015,  and September 12,

9   2016. The total amount of the bonus due Couch pursuant to the Bonus Agreement was

10   $639,128.00.  Pursuant to paragraph 2 of Bonus 1, no unpaid bonus "shall be, or become, due and

11   payable hereunder unless (a) Employee is continuously in the employ of Morgan Stanley from

12   [September 4, 2007] to and including the date such bonus is due and payable according to the

13   scheduled contained in Paragraph 1 [of the Bonus Agreement] . . . ."

14         14.    In connection with its agreement to pay Couch Bonus 1, on or about August 30,

15   2007, MS&Co. delivered a check to Couch in the amount of $506,240.00 and then demanded that

16   Couch execute a Promissory Note in favor of MS&Co. ("Promissory Note 1"), a true and correct

17   copy of which is annexed hereto as Exhibit "C" and its terms incorporated herein by reference.

18   The amount of the loan to Couch reflected in Promissory Note 1, $506,240.00, is identical to the

19   amount of the "upfront bonus amount" identified in a document titled "2007 Recruit Cover Sheet,"

20   a true and correct copy of which is annexed hereto as Exhibit "D" and its terms incorporated

21   herein by reference.

22         15.    As reflected in Exhibits "B" and "C", each of the payments due Couch under

23   Bonus 1 was to be made to Couch within 12 days after Couch had paid MS&Co. the annual

24   installment due on August 30th under Promissory Note 1.   Pursuant to Promissory Note 1,

25   MS&Co. had the right to declare Promissory Note 1 immediately due and payable if Couch were

26   terminated.

27         16.    In connection with his employment by MS&Co., Couch was offered an additional

28   bonus if he proved successful in transferring a high percentage of his Smith Barney client accounts

1  to MS&Co. after he joined the firm ("Bonus 2").  Couch met the MS&Co. target and was awarded

2  Bonus 2, in the amount of $43,228.53, payable in installments over eight years.  Bonus 2, like

3  Bonus 1, was subject to the same condition that Couch continuously be in the employ of MS&Co.

4  to and including on the date each installment of Bonus 2 is due and payable.  But, no such

5  agreement appears in the personnel file that was recently transmitted to Couch by Morgan Stanley

6  ("Couch Personnel File").

7          17.     In connection with the Second Bonus, on or about December 11, 2008, MS&Co.

8  delivered a check to Couch in the amount of $43,228.53 and then demanded that Couch execute a

9  promissory note ("Promissory Note 2") in the amount of $43,228.53, a true and correct copy of

10 which is annexed hereto as Exhibit "E," and its terms incorporated herein by reference.

11 Promissory Note 2 called for eight payments by Couch to MS&Co on December 11, 2009,

12 December 11, 2010, December 11, 2011, December 11, 2012, December 11, 2013, December 11,

13 2014, December 11, 2015, and December 11, 2016 each in the amount of $5,403.57.  Pursuant to

14 Promissory Note 2, MS&Co. had the right to declare Promissory Note 2 immediately due and

15 payable if Couch were terminated.  No copy of Promissory Note 2 appears to be in the Couch

16 Personnel File.

17          **B.      MS&Co. Authorizes Couch's Activity As An Elected Public Official**

18          18.     When Couch agreed to become employed by MS&Co., he was a member of the

19 Bakersfield City Council, a position to which he had been elected in 1998 and re-elected in 2002,

20 2006, and 2010.

21          19.     Months before he became employed by MS&Co., Couch had conversations with

22 Rachell Fanucchi ("Fanucchi"), the person who became his immediate supervisor at MS&Co., in

23 which he disclosed that he intended to seek re-election to the Bakersfield City Council and, if re-

24 elected, to continue to serve as a member of the Bakersfield City Council.  In addition, Couch

25 disclosed to Fanucchi that he intended to run for the Kern County Board of Supervisors, probably

26 in 2012.  Couch provided Fanucchi with the information about his political activities because he

27 wanted MS&Co. to be aware of and approve his plan before he accepted a job with MS&Co..  If

28 MS&Co. had not approved Couch's existing and proposed activity as an elected public official he

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1  would not have agreed to accept MS&Co.'s offer of employment and would not have facilitated

2  the transfer of his existing client accounts to MS&Co.

3      20.    Fanucchi followed up on Couch's request that she obtain approval of his plan to

4  run for re-election as a member of the Bakersfield City Council and election to the Kern County

5  Board of Supervisors and informed Couch that she did not think his plan would present a problem

6  for MS&Co.  Thereafter, consistent with her prior representations, Fanucchi presented Couch with

7  an agreement re "Outside Activity Request" that was signed by Couch and Fanucchi, on behalf of

8  MS&Co., that approved Couch being a city council member and being a county supervisor subject

9  to certain conditions, all of which are set forth in the agreement ("MS&Co. Consent Re Public

10  Office"), a true and correct copy of which is annexed hereto as Exhibit "F" and its terms

11  incorporated herein by reference.

12      21.    Couch is informed and believes that the MS&Co. Consent Re Public Office was

13  drafted by MS&Co. attorneys who received input from outside counsel in connection with its

14  preparation.  Couch did not request any changes to the MS&Co. Consent Re Public Office, and no

15  changes were made before Couch executed the agreement.  Thereafter, MS&Co. never requested

16  that Couch consent to any modification to MS&Co. Consent Re Public Office.  At all times

17  relevant hereto, Couch has abided by the terms of the MS&Co. Consent Re Public Office.

18      22.    If Fanucchi had not executed the MS&Co. Consent Re Public Office on behalf of

19  MS&Co., Couch would not have agreed to accept MS&Co.'s offer of employment and would not

20  have facilitated the transfer of his existing client accounts to MS&Co.

21      **C.    Couch Is Terminated by Morgan Stanley After He Is Elected to the Kern**

22          **County Board of Supervisors**

23      23.    In late 2011 and early 2012, Couch had a series of conversations with Fanucchi

24  about his plan to run for the Kern County Board of Supervisors.  During one such conversation in

25  or about January 2012, Fanucchi informed Couch that he needed to enter a request for this activity

26  on the Morgan Stanley OBI system ("OBI System").  According to Fanucchi, consistent with the

27  MS&Co. Consent re Public Office, Morgan Stanley's consent was "not a problem."

28

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

24.     On or about February 15, 2012, Couch entered a request to run for election to the Kern County Board of Supervisors on the OBI System.  Thereafter, while aware that Couch was running for election, actively campaigning and soliciting support for his candidacy, Morgan Stanley caused Couch to respond over a period of months to questions from various people at Morgan Stanley about hypothetical and remote potential conflicts that he might confront as a result of serving on the Kern County Board of Supervisors and working as a financial advisor at Morgan Stanley.

25.     Thereafter, an attorney in Morgan Stanley's legal department asked that Couch have "an authorized individual" from the Kern County Board of Supervisors review and sign a form letter, a true and correct copy of which is attached hereto as Exhibit "G."  The letter, among other things, requests that the Kern County Board of Supervisors provide the following assurances to Morgan Stanley:   "[t]he [Kern County Board of Supervisors] is aware of no law, rule, regulation or policy that would preclude Morgan Stanley Smith Barney or its affiliates from doing business with the [Kern County Board of Supervisors] and its affiliates as a result of [David Couch's] position [as a member of the Kern County Board of Supervisors]."

26.     On or about June 6, 2012, Couch was elected to the Kern County Board of Supervisors.  Approximately a month later, Couch was informed by counsel for the Kern County Board of Supervisors that Kern County would not execute the letter.   Couch promptly communicated this response to Fanucchi and perhaps the Morgan Stanley attorney from whom he received the form letter.

27.     On or about December 20, 2012, two business days before Christmas **-- *more than six months after his election to the Kern County Board of Supervisors*--** Couch participated in a telephone call with Fanucchi and Morgan Stanley employee, Jeff Branch, during which he was told that the decision had been made that (i) "the conflicts" (never identified or explained by Morgan Stanley during the call or at any other time) could not be handled to Morgan Stanley's satisfaction; and (ii) by December 28, 2012, Couch had to decide whether he wanted to be a Morgan Stanley financial advisor or a Kern County Supervisor.

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

28.     Couch was terminated as a Morgan Stanley financial advisor on January 16, 2013. *Six months later*, Couch, received from Morgan Stanley a copy of the Form U5 that the firm was required to file with FINRA which states the reason for Couch's termination.  The Termination Explanation provided by Morgan Stanley in the Form U5 that the firm caused to be filed with FINRA ("Couch U5"), a true and correct copy of which is annexed hereto as Exhibit "H" (with confirmation information redacted), is as follows: "SEPARATION FROM THE FIRM IN LIGHT OF INDIVDUAL'S COUNTY SUPERVISOR POSITION."

**D.     After Couch's Unlawful Termination Morgan Stanley Diverts and Misappropriates the Couch Client Transferees**

29.     Upon termination, Couch was immediately precluded from pursuing his lawful profession until he could affiliate and be registered with another broker-dealer.  But, Couch was prevented from taking any action to solicit the Couch Client Transferees, the business he had developed over a twenty-year career, pursuant to Paragraph 3 of the Employment Agreement.

30.     Paragraph 3 of the Employment Agreement titled "Unfair Competition," is a broad prohibition that prevented Couch, immediately following the unlawful termination of his employment from Morgan Stanley, from continuing his existing economic relationship with each of the Couch Client Transferees.  Paragraph 3 prohibited Couch from soliciting or attempting to solicit, directly or indirectly, any of the clients he serviced while at Morgan Stanley, including the Couch Client Transferees.  Paragraph 3 of the Employment Agreement defines "solicit" as follows:  "initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged."

31.     Couch is informed and believes that in connection with his unlawful termination from Morgan Stanley, the firm caused the business and accounts of his Morgan Stanley clients, including the Couch Client Transferees, to be diverted to other financial advisors employed by Morgan Stanley.  Couch is further informed and believes that consistent with Morgan Stanley's general practice in connection with the distribution of the accounts of terminated financial advisors by means of a ranking system, the accounts of the majority of the Couch Client

1  Transferees were distributed to the financial advisors at the Morgan Stanley Bakersfield office
2  immediately following Couch's unlawful termination.

3      32.     Couch is informed and believes that Morgan Stanley, as a result of its successful
4  misappropriation and diversion of the Couch Client Transferees, has been paid and will continue
5  to be paid substantial fees in connection with, among other things, the management of the business
6  and accounts of the Couch Client Transferees.

7      **E.     Morgan Stanley Files A Claim In Arbitration to Recover On Promissory Notes**
8         **1 and 2**

9      33.     On or about September 19, 2013, Morgan Stanley and Morgan Stanley Smith
10 Barney FA Notes Holdings, LLC filed a Statement of Claim with FINRA seeking to recover
11 amounts allegedly due and owing by Couch on Promissory Notes 1 and 2 ("Morgan Stanley
12 Arbitration Claim").  That action was dismissed following Couch's payment to Morgan Stanley of
13 the amount it claimed was due under Promissory Notes 1 and 2.  But for Morgan Stanley's
14 unlawful termination of Couch, as alleged more particularly herein, Morgan Stanley would not
15 have had any basis to assert that Couch was liable for any allegedly due on Promissory Notes 1
16 and 2.

17            **<u>FIRST CLAIM FOR RELIEF</u>**

18          **FOR VIOLATION OF LABOR CODE § 1101(a)**

19        **(Against MORGAN STANLEY SMITH BARNEY, LLC and**

20          **MORGAN STANLEY & CO., INCORPORATED)**

21     34.     Plaintiff incorporates by this reference each and every allegation in paragraphs 1
22 through 33 as though fully set forth herein.

23     35.     Under California Law, no employer shall make, adopt, or enforce any rule,
24 regulation, or policy preventing its employees from engaging or participating in politics or from
25 becoming candidates for public office. *See* Labor Code § 1101(a).

26     36.     Any employer who violates these provisions is guilty of a misdemeanor, and an
27 employee may recover from his or her employer for any injury suffered as a result of such a
28 violation.

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

37.     As alleged more particularly herein, Morgan Stanley's legal department asked that Couch have "an authorized individual" from the Kern County Board of Supervisors review and sign the form letter annexed hereto as Exhibit "G." The letter, among other things, mandates that the Governmental Entity executing Exhibit "G" provide Morgan Stanley with the following written assurances: "The [Governmental Entity] further understands that Morgan Stanley Smith Barney, LLC and its affiliates may now, or may in the future do business with the [Governmental Entity] and its affiliates. The [Governmental Entity] is aware of no law, rule, regulation or policy that would preclude Morgan Stanley Smith Barney or its affiliates from doing business with the [Governmental Entity] and its affiliates as a result of [Name of Employee] position." Kern County reasonably refused to execute Exhibit "G".

38.     The Fair Political Practices Commission ("FPPC") is responsible for enforcement of the California Political Reform Act ("PRA") and in that capacity issues advice letters that are available to the public, including Morgan Stanley. One such letter, FPPC Advice Letter, No. I-93-023 addresses the situation by which Morgan Stanley was confronted when in or about February 15, 2012, Couch entered a request to run for election to the Kern County Board of Supervisors on the OBI System. The issue raised by FPPC Advice Letter, No. I-93-023 is whether the PRA prohibits a council member from accepting employment with a brokerage firm that does business in the jurisdiction and has contracted with the city in the past to issue bonds? According to FPPC Advice Letter, No. I-93-023, the PRA does not prohibit the council member from accepting employment with the brokerage firm. However, the conflict-of-interest provisions of the PRA prohibit the council member from making, participating in making, or otherwise using his official position to influence a governmental decision that will materially affect any economic interest, including sources of income such as the brokerage firm and clients who will have paid the council member commission income.

39.     These are the provisions of the PRA that applied to Couch while employed by Morgan Stanley and a member of the Bakersfield City Council.

40.     Morgan Stanley's mandate that its employees, including Couch, cause Exhibit "G" to be executed by a Governmental Entity in connection with the employee's service as an elected

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

public official of that Governmental Entity while employed by Morgan Stanley -- or be terminated by Morgan Stanley -- reflects the clear policy of Morgan Stanley that its employees must refrain from engaging or participating in politics and from becoming candidates for public office. That policy, as applied to Couch, violates Labor Code § 1101(a).

41.     Morgan Stanley has expressly admitted that it caused Couch's employment with the firm to be terminated "IN LIGHT OF [COUCH'S] COUNTY SUPERVISOR POSITION."

42.     As a proximate result of Morgan Stanley's unlawful termination of Couch in violation of Labor Code § 1101(a), Couch has suffered and will continue to suffer damages in an amount in excess of $2 million dollars.

43.     In connection with its violation of Labor Code § 1101(a), an award of exemplary and punitive damages is appropriate because Morgan Stanley is guilty of malice, in that, among other things, it knowingly and intentionally engaged in despicable conduct, as alleged more particularly herein, that was intended by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a willful and conscious disregard of Couch's protected rights under the Labor Code. Further, an award of exemplary and punitive damages is appropriate because Morgan Stanley is guilty of oppression in that, among other things, it knowingly engaged in despicable conduct, as alleged more particularly herein, that was intended by Morgan Stanley to subject Couch to cruel and unjust hardship in conscious disregard of Couch's protected rights under the Labor Code. Couch is informed and believes that officers, directors and/or managing agents of Morgan Stanley authorized and ratified the conduct that was intended by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a willful and conscious disregard of Couch's protected rights under the Labor Code.

44.     As a proximate result of Morgan Stanley's unlawful termination of Couch in violation of Labor Code § 1101(a), Morgan Stanley has been able to successfully divert and misappropriate the business and accounts of the Couch Transferee Clients.

45.     In connection with its violation of Labor Code § 1101(a), the remedy of disgorgement is appropriate. Morgan Stanley should not be allowed to benefit by and retain the profits it has gained in connection with its illegal conduct. But for Morgan Stanley's unlawful

1   termination of Plaintiff, the firm would not have been able to successfully divert and

2   misappropriate the business and accounts of the Couch Transferee Clients.

3                              **SECOND CLAIM FOR RELIEF**

4                      **FOR VIOLATION OF LABOR CODE § 1102**

5                   **(Against MORGAN STANLEY SMITH BARNEY, LLC and**

6                      **MORGAN STANLEY & CO., INCORPORATED)**

7          46.    Plaintiff incorporates by this reference each and every allegation in paragraphs 1

8   through 45 as though fully set forth herein.

9          47.    Under California Labor Code § 1102, "[n]o employer shall coerce or influence or

10  attempt to coerce or influence his employees through or by means of threat of discharge or loss of

11  employment to adopt or follow or refrain from adopting or following any particular course or line

12  of political action or political activity."

13         48.    As alleged more particularly herein, in or about December 2012, Morgan Stanley

14  personnel, in violation of Labor Code § 1102, made clear threats to Couch that were designed to

15  attempt to coerce or influence Couch through or by means of threat of discharge and loss of

16  employment to relinquish his newly-elected position on the Kern County Board of Supervisors.

17         49.    When Couch did not resign his newly-elected position on the Kern County Board

18  of Supervisors, on January 16, 2013, Morgan Stanley caused Couch's employment with the firm

19  to be unlawfully terminated "IN LIGHT OF [COUCH'S] COUNTY SUPERVISOR POSITION."

20         50.    As a proximate result of Morgan Stanley's unlawful threats and subsequent

21  termination of Couch, in violation of Labor Code § 1102, Couch has suffered and will continue to

22  suffer damages in an amount in excess of $2 million dollars.

23         51.    In connection with its violation of Labor Code § 1102, an award of exemplary and

24  punitive damages is appropriate because Morgan Stanley is guilty of malice, in that, among other

25  things, it knowingly and intentionally engaged in despicable conduct, as alleged more particularly

26  herein, that was intended by Morgan Stanley to cause injury to Couch and which was carried on

27  by Morgan Stanley with a willful and conscious disregard of Couch's protected rights under the

28  Labor Code.  Further, an award of exemplary and punitive damages is appropriate because

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1    Morgan Stanley is guilty of oppression in that, among other things, it knowingly engaged in

2    despicable conduct, as alleged more particularly herein, that was intended by Morgan Stanley to

3    subject Couch to cruel and unjust hardship in conscious disregard of Couch's protected rights

4    under the Labor Code.  Couch is informed and believes that officers, directors and/or managing

5    agents of Morgan Stanley authorized and ratified the conduct that was intended by Morgan

6    Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a willful and

7    conscious disregard of Couch's protected rights under the Labor Code.

8        52.    As a proximate result of Morgan Stanley's unlawful termination of Couch in

9    violation of Labor Code § 1102, Morgan Stanley has been able to successfully divert and

10   misappropriate the business and accounts of the Couch Transferee Clients.

11       53.    In connection with its violation of Labor Code § 1102, the remedy of disgorgement

12   is appropriate.  Morgan Stanley should not be allowed to benefit by and retain the profits it has

13   gained in connection with its illegal conduct.  But for Morgan Stanley's unlawful termination of

14   Plaintiff, the firm would not have been able to successfully divert and misappropriate the business

15   and accounts of the Couch Transferee Clients.

16                          **THIRD CLAIM FOR RELIEF**

17                   **FOR VIOLATION OF LABOR CODE § 98.6**

18              **(Against MORGAN STANLEY SMITH BARNEY, LLC and**

19                  **MORGAN STANLEY & CO., INCORPORATED)**

20       54.    Plaintiff incorporates by this reference each and every allegation in paragraphs 1

21   through 53 as though fully set forth herein.

22       55.    Labor Code § 98.6 provides, among other things, that no employer shall discharge

23   or discriminate against any employee because he engaged in conduct protected under the Labor

24   Code.  Further, the statute provides that any employee who is discharged because the employee

25   engaged in any conduct delineated in this chapter, "including the conduct described in . . . Chapter

26   5 (commencing with Section 1101) of Part 3 of Division 2 . . . shall be entitled to reinstatement

27   and reimbursement for lost wages and work benefits caused by those acts of the employer."

28

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

56.     As alleged more particularly herein, Defendant Morgan Stanley unlawfully terminated Couch because he engaged in conduct protected by Labor Code §§ 1101 and 1102. Therefore, Couch is entitled to, among other things, reimbursement for lost wages and work benefits caused by the unlawful acts of Morgan Stanley.

57.     In connection with its violation of Labor Code § 98.6, an award of exemplary and punitive damages is appropriate because Morgan Stanley is guilty of malice, in that, among other things, it knowingly and intentionally engaged in despicable conduct, as alleged more particularly herein, that was intended by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a willful and conscious disregard of Couch's protected rights under the Labor Code.  Further, an award of exemplary and punitive damages is appropriate because Morgan Stanley is guilty of oppression in that, among other things, it knowingly engaged in despicable conduct, as alleged more particularly herein, that was intended by Morgan Stanley to subject Couch to cruel and unjust hardship in conscious disregard of Couch's protected rights under the Labor Code.  Couch is informed and believes that officers, directors and/or managing agents of Morgan Stanley authorized and ratified the conduct that was intended by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a willful and conscious disregard of Couch's protected rights under the Labor Code.

58.     As a proximate result of Morgan Stanley's unlawful termination of Couch in violation of Labor Code § 98.6, Morgan Stanley has been able to successfully divert and misappropriate the business and accounts of the Couch Transferee Clients.

59.     In connection with its violation of Labor Code § 98.6, the remedy of disgorgement is appropriate.  Morgan Stanley should not be allowed to benefit by and retain the profits it has gained in connection with its illegal conduct.  But for Morgan Stanley's unlawful termination of Plaintiff, the firm would not have been able to successfully divert and misappropriate the business and accounts of the Couch Transferee Clients.

**FOURTH CLAIM FOR RELIEF**

**FOR INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE**

**ECONOMIC RELATIONSHIPS**

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

**(Against MORGAN STANLEY SMITH BARNEY, LLC and**

**MORGAN STANLEY & CO., INCORPORATED)**

60.     Plaintiff incorporates by this reference each and every allegation in paragraphs 1 through 59 as though fully set forth herein.

61.     As alleged more particularly herein, Morgan Stanley, in violation of California Labor Code §§ 1101(a), 1102 and 98.6, terminated Couch on or about January 16, 2013.  Upon termination, Couch was immediately precluded from pursuing his lawful profession until he could affiliate and be registered with another broker-dealer.

62.     At the time of Couch's unlawful termination by Morgan Stanley, as Morgan Stanley at all relevant times was aware, at least 75% of Couch's client accounts were accounts that were owned or controlled by Couch Client Transferees with whom Couch had an existing economic relationship, with the probability of future economic benefit to Couch.  Much of the information Couch had in his possession about the Couch Client Transferees, including, but not limited to, the client names, addresses and telephone numbers, was information that Couch learned before he was employed by Morgan Stanley.  In addition, Couch's information about the Couch Client Transferees was information known by, or available to Couch before he was employed by Morgan Stanley.

63.     On account of Paragraph 3 of the Employment Agreement Couch, immediately following the unlawful termination of his employment from Morgan Stanley, was prohibited from continuing his existing economic relationship with each of the Couch Client Transferees.

64.     Paragraph 3 of the Employment Agreement is void and unenforceable in that it violates California Business and Professions Code section 16600 that codifies California's general policy with regard to non-compete agreements in the context of employment contracts. Except for two statutory exceptions not relevant here, under section 16600, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

65.     Morgan Stanley's use of an illegal non-compete agreement violates California Business & Professions Code § 17200 ("UCL").     *See Khan v. K2 Pure Solutions, LP*, ---

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1    F.Supp.2d ----, 2013 WL 5503957 (N.D. Cal., 2013).  By using illegal non-compete agreements,

2    Morgan Stanley has engaged in a practice that offends an established public policy of California.

3        66.    As a result of the unlawful termination of Couch by Morgan Stanley in violation of

4    the California Labor Code, as described more particularly herein, the relationship between Couch

5    and each of the Couch Client Transferees has been disrupted.

6        67.    Morgan Stanley's conduct, as described herein, was intentional, willful, and

7    calculated to cause damage to Plaintiff.

8        68.    As a direct, proximate and foreseeable result of Morgan Stanley's violation of the

9    UCL and California Labor Code as more particularly described herein, Couch was and continues

10   to suffer economic harm in that, *inter alia*, Morgan Stanley interfered with his existing and

11   prospective economic relationship with the Couch Client Transferees.

12       69.    As a direct, proximate and foreseeable result of Morgan Stanley's violation of the

13   UCL and California Labor Code as more particularly described herein, Morgan Stanley

14   intentionally interfered with Couch's existing and prospective economic relationship with the

15   Couch Client Transferees and successfully misappropriated and diverted the Couch Client

16   Transferees to new Morgan Stanley financial advisors.  Couch is informed and believes that

17   Morgan Stanley, as a result of its successful misappropriation and diversion of the Couch Client

18   Transferees, has been paid and will continue to be paid substantial fees in connection with, among

19   other things, the management of the business and accounts of the Couch Client Transferees.

20       70.    In connection with its intentional interference with Couch's existing and

21   prospective economic relationships, an award of exemplary and punitive damages is appropriate

22   because Morgan Stanley is guilty of malice, in that, among other things, it knowingly and

23   intentionally engaged in despicable conduct, as alleged more particularly herein, that was intended

24   by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a

25   willful and conscious disregard of Couch's protected rights under, among other things, the Labor

26   Code.  Further, an award of exemplary and punitive damages is appropriate because Morgan

27   Stanley is guilty of oppression in that, among other things, it knowingly engaged in despicable

28   conduct, as alleged more particularly herein, that was intended by Morgan Stanley to subject

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

1  Couch to cruel and unjust hardship in conscious disregard of Couch's protected rights under,

2  among other things, the Labor Code.  Couch is informed and believes that officers, directors

3  and/or managing agents of Morgan Stanley authorized and ratified the conduct that was intended

4  by Morgan Stanley to cause injury to Couch and which was carried on by Morgan Stanley with a

5  willful and conscious disregard of Couch's protected rights under, among other things, the Labor

6  Code.

### FIFTH CLAIM FOR RELIEF

### FOR NEGLIGENT INTERFERENCE WITH EXISTING AND PROSPECTIVE

### ECONOMIC RELATIONSHIPS

### (Against MORGAN STANLEY SMITH BARNEY, LLC and

### MORGAN STANLEY & CO., INCORPORATED)

12      71.    Plaintiff incorporates by this reference each and every allegation in paragraphs 1

13  through 70 as though fully set forth herein.

14      72.    As alleged more particularly herein, Morgan Stanley, in violation of California

15  Labor Code §§ 1101(a), 1102 and 98.6, terminated Couch on or about January 16, 2013.  Upon

16  termination, Couch was immediately precluded from pursuing his lawful profession until he could

17  affiliate and be registered with another broker-dealer.

18      73.    At the time of Couch's unlawful termination by Morgan Stanley, as Morgan

19  Stanley at all relevant times was aware, at least 75% of Couch's client accounts were accounts that

20  were owned or controlled by Couch Client Transferees with whom Couch had an existing

21  economic relationship, with the probability of future economic benefit to Couch.  Much of the

22  information Couch had in his possession about the Couch Client Transferees, including, but not

23  limited to, the client names, addresses and telephone numbers, was information that Couch learned

24  before he was employed by Morgan Stanley. Morgan Stanley knew the relationship between

25  Couch and the Couch Transferees Clients would be disrupted if Morgan Stanley failed to act with

26  reasonable care.   In addition, Couch's information about the Couch Client Transferees was not

27  information not known by, or available to Couch "other than in the ordinary course of conducting

28  business for Morgan Stanley and its affiliates."

74.     Paragraph 3 of the Employment Agreement titled "Unfair Competition," is a broad prohibition that prevented Couch, immediately following the unlawful termination of his employment from Morgan Stanley, from continuing his existing economic relationship, with the probability of future economic benefit to Couch, with each of the Couch Transferee Clients, because Paragraph 3 prohibited Couch from soliciting or attempting to solicit, directly or indirectly, any of the clients he serviced while at Morgan Stanley, including the Couch Client Transferees.  Paragraph 3 of the Employment Agreement defines "solicit" as follows:  "initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged."

75.     Paragraph 3 of the Employment Agreement is void and unenforceable in that it violates California Business and Professions Code section 16600 that codifies California's general policy with regard to non-compete agreements in the context of employment contracts.  Except for two statutory exceptions not relevant here, under section 16600, "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

76.     Morgan Stanley's use of an illegal non-compete agreement violates California Business & Professions Code § 17200 ("UCL").  *See Khan v. K2 Pure Solutions, LP*, --- F.Supp.2d ----, 2013 WL 5503957 (N.D. Cal., 2013).  By using illegal non-compete agreements, Morgan Stanley has engaged in a practice that offends an established public policy of California, and Morgan Stanley failed to act with reasonable care.

77.     As a result of the unlawful termination of Couch by Morgan Stanley in violation of the California Labor Code, as described more particularly herein, the relationship between Couch and each of the Couch Transferee Clients has been disrupted.

78.     Couch is informed and believes that in connection with his unlawful termination from Morgan Stanley, the firm caused the business and accounts of his Morgan Stanley clients, including the Couch Client Transferees, to be diverted to other financial advisors employed by Morgan Stanley.  Couch is further informed and believes that consistent with Morgan Stanley's

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

general practice in connection with the distribution of the accounts of terminated financial advisors by means of a ranking system, the accounts of the majority of the Couch Client Transferees were distributed to the financial advisors at the Morgan Stanley Bakersfield office immediately following Couch's unlawful termination.

79.   Morgan Stanley's conduct, as described herein, was negligent and caused damage to Plaintiff.

80.   As a direct, proximate and foreseeable result of Morgan Stanley's violation of the UCL and California Labor Code as more particularly described herein, Couch was and continues to suffer economic harm in that, *inter alia*, Morgan Stanley interfered with Plaintiff's existing and prospective economic relationship with the Couch Client Transferees.

81.   As a direct, proximate and foreseeable result of Morgan Stanley's violation of the UCL and California Labor Code as more particularly described herein, Morgan Stanley negligently interfered with Couch's existing and prospective economic relationship with the Couch Client Transferees and successfully misappropriated and diverted the Couch Client Transferees to new Morgan Stanley financial advisors.  Couch is informed and believes that Morgan Stanley, as a result of its successful misappropriation and diversion of the Couch Client Transferees, has been paid and will continue to be paid substantial fees in connection with, among other things, the management of the business and accounts of the Couch Client Transferees.

**WHEREFORE**, Plaintiff prays for Judgment against Morgan Stanley as follows:

1.   First, Second, Third and Fourth Claims for Relief:  Compensatory and exemplary and punitive damages and/or disgorgement to be awarded to Couch according to proof at trial;

2.   Fifth Claim for Relief:  Compensatory damages and/or disgorgement to be awarded to Couch according to proof at trial;

3.   For costs of suit incurred herein, including reasonable attorneys' fees, costs and expenses;

4.   For prejudgment interest at the legal rate; and

5   For such other and further relief as the Court may deem just and proper.

FIRST AMENDED COMPLAINT

**JURY DEMAND**

Plaintiff hereby demands trial by jury of all claims and issues properly triable by jury.

Dated: May 9, 2014                    KLAR & ASSOCIATES

By:

DEBORAH KLAR
Attorneys for Plaintiff
DAVID COUCH

KLAR & ASSOCIATES
2934 ½ Beverly Glen Circle, Ste 761
Bel Air, CA 90077
(310) 858-9500

FIRST AMENDED COMPLAINT

# EXHIBIT A

*MORGAN STANLEY*

**FINANCIAL ADVISOR**
**EMPLOYMENT AGREEMENT**

This agreement (referred to as the, or this, "Agreement") is made between Morgan Stanley & Co. Incorporated, a Delaware Corporation, (referred to as "Morgan Stanley") and DAVID COUCH.

In consideration of your compensation and employment by Morgan Stanley as a Financial Advisor, and for other good and valuable consideration, you hereby agree as follows:

## 1.   AT-WILL EMPLOYMENT AND TERMINATION

Nothing in this Agreement is a promise of employment for a fixed term. Your employment by Morgan Stanley is strictly at-will and may be terminated by either party, for any reason or for no reason, at any time, with or without notice, and with or without cause. As used in this Agreement, "termination" includes (1) voluntary or involuntary resignation, (2) retirement, (3) release due to a reduction in force or closing of a branch office, or (4) discharge by Morgan Stanley. _(EMPLOYEE INITIALS)

## 2.   TRADE SECRETS AND OTHER CONFIDENTIAL INFORMATION

2.1   In the course of your employment with Morgan Stanley, you will have access to information that has been acquired by expenditures of time, effort, and money by Morgan Stanley, and which is valuable and proprietary to Morgan Stanley because, among other reasons, this information it is not known by, or available to, the general public or persons or entities other than in the ordinary course of conducting business for Morgan Stanley and its affiliates. This information includes, but is not limited to: (a) customer files, lists, and holding pages; (b) the names, addresses, telephone numbers, and assets and obligations carried in the accounts of Morgan Stanley's customers; (c) Morgan Stanley customer account histories and customer risk profiles; (d) computer software or hardware for use in computer or word processing equipment; (e) all training material forwarded to you during your employment (including but not limited to books, papers, records, videotapes and recordings); (f) documents or computer programs prepared or generated by you, if any, using Morgan Stanley records or information; (g) Morgan Stanley's business or marketing plans and strategies; and (h) other information or materials subject to intellectual property protection that are highly confidential. All of the above described information and documents are hereinafter collectively referred to as "Trade Secrets." You acknowledge and agree that these Trade Secrets are unique, cannot lawfully be easily duplicated or acquired, and that Morgan Stanley views the Trade Secrets as highly confidential and takes all reasonable measures to maintain their confidentiality and secrecy. _(EMPLOYEE INITIALS)

2.2   In the course of your employment with Morgan Stanley, you will also have access to records, documents, and information concerning the business and affairs of Morgan Stanley and its employees (hereinafter "Company Records") that are and will always be the confidential and exclusive property of Morgan Stanley. Company Records include, but are

not limited to, Morgan Stanley books and records and excerpts or derivations thereof. Company Records also include information and documents described as Trade Secrets in Paragraph 2.1 above. Company Records include the originals and all copies thereof (whether in hard copy, computerized, or any other form). ⎵⎵**(EMPLOYEE INITIALS)**

2.3   You agree that, during the course of your employment with Morgan Stanley or otherwise, you will not remove Trade Secrets or other Company Records from the premises of Morgan Stanley in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Morgan Stanley. You also agree that you will not use Trade Secrets or other Company Records for any purpose other than the purpose of conducting the business of Morgan Stanley. You further agree that (a) your use of Trade Secrets and other Company Records will stop immediately upon the suspension or termination of your employment relationship with Morgan Stanley; (b) you will immediately deliver to Morgan Stanley, at the time of suspension or termination of your employment or at any other time upon Morgan Stanley's request, any Trade Secrets or other Company Records in your possession or control; and (c) you will permit Morgan Stanley to inspect, prior to removal, any materials you intend to take from Morgan Stanley offices when your employment with Morgan Stanley is suspended or terminated. In addition, you agree that, should you decide to terminate your employment with Morgan Stanley, your use of Trade Secrets and other Company Records will stop immediately and permanently, unless otherwise agreed to by Morgan Stanley. ⎵⎵**(EMPLOYEE INITIALS)**

2.4   You agree that, both during and subsequent to the course of your employment with Morgan Stanley, you will not disclose to any person or entity the contents, in whole or in part, of Trade Secrets or other Company Records, except in the ordinary course of conducting business for Morgan Stanley. ⎵⎵**(EMPLOYEE INITIALS)**

2.5   You will not at any time assert any claim of ownership or other property interest in Trade Secrets or other Company Records. ⎵⎵**(EMPLOYEE INITIALS)**

2.6   If you create, contribute to or conceive any copyrightable work within the scope of your employment at Morgan Stanley, Morgan Stanley may assert that such copyrightable work is a "work-made-for-hire," and you agree that, upon Morgan Stanley's assertion that a work is a "work-made-for-hire," Morgan Stanley shall own all such rights in the copyrightable work. ⎵⎵**(EMPLOYEE INITIALS)**

3.   **UNFAIR COMPETITION**

3.1   You acknowledge and agree that the resources, training, goodwill and reputation of Morgan Stanley are the primary and material factors in your ability to develop and service Morgan Stanley customers, and that all customers serviced by you on behalf of Morgan Stanley are customers of Morgan Stanley. ⎵⎵**(EMPLOYEE INITIALS)**

3.2   For a period of one year following termination of employment for any reason, you will not solicit or attempt to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley or as a result of your employment with Morgan Stanley, with respect to securities,

commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. For purposes of this provision, the term "solicit" includes initiation of any contact with customers for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged. _____(EMPLOYEE INITIALS)

3.3     For a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged. _____(EMPLOYEE INITIALS)

4.     **RIGHT TO INJUNCTION**

4.1     In the event you breach any of your obligations concerning "Trade Secrets and Other Confidential Information" or "Unfair Competition" contained in paragraphs 2 or 3 of this Agreement, you agree that Morgan Stanley will be entitled to injunctive relief from a court of competent jurisdiction, or from any arbitration forum specified in this Agreement. You understand and agree that Morgan Stanley will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Morgan Stanley or to protect and preserve the status quo pending arbitration (as provided for in paragraph 7 of this Agreement). Therefore, YOU CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY OR PERMANENT INJUNCTION ordering:

    (a)     that you immediately return to Morgan Stanley all Trade Secrets and Company Records, whether original, duplicated, computerized, handwritten, or in any other form whatsoever, and that you be enjoined and restrained from using or disclosing any information contained in such materials; _____(EMPLOYEE INITIALS)

    (b)     that, for a period of one year following the termination of your employment, you be enjoined and restrained from soliciting or attempting to solicit, directly or indirectly, any of Morgan Stanley's customers who were served by you, or whose names became known to you, while in the employ of Morgan Stanley, with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Morgan Stanley or any of its affiliates is engaged; _____(EMPLOYEE INITIALS) and

    (c)     that, for a period of one year following termination of employment for any reason, you will not, directly or indirectly, recruit or solicit any employee of Morgan Stanley for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which

Morgan Stanley or any of its affiliates is engaged. _____ **(EMPLOYEE INITIALS)**

4.2   You agree that Morgan Stanley's application to any court for an injunction or other provisional relief will not constitute a waiver by Morgan Stanley of its right to arbitration as provided for in paragraph 7.1 of this Agreement, and that any hearing on the merits in such dispute shall be conducted in arbitration. If, after issuance of a temporary restraining order or permanent injunction, the parties proceed to arbitration, you agree to consent to expedited hearing procedures for such arbitration. You further agree that any injunction or provisional order shall stay in full force and effect until a panel of arbitrators renders a full and final decision on the merits. _____ **(EMPLOYEE INITIALS)**

5.   **ADHERENCE TO APPLICABLE LAWS AND POLICIES**

You agree to become familiar with and abide by the rules, regulations, and policies of Morgan Stanley, the National Association of Securities Dealers, Inc., the New York Stock Exchange, and any other securities and commodities exchanges of which Morgan Stanley is a member. You also agree to become familiar with and abide by any applicable state and federal securities laws and regulations. _____ **(EMPLOYEE INITIALS)**

6.   **HOLD HARMLESS**

You agree to indemnify Morgan Stanley for, and hold it harmless from, any and all losses or liabilities incurred by Morgan Stanley caused by (a) your violation of applicable state or federal laws, duties, rules or regulations; (b) your violation of Morgan Stanley's policies; or (c) your breach of any of the provisions of this Agreement. You further agree to indemnify Morgan Stanley, consistent with and as permitted by law, for your commission deficits, other employee losses, or customer losses, that are caused or permitted by you. Consistent with and as permitted by applicable law, you authorize Morgan Stanley, with or without notice to you, to withhold amounts equal to any such losses or liabilities from amounts payable, due, or held in an account or otherwise for you, including, but not limited to, assets held by you in any investment or securities related account(s), and from any commissions, bonuses, deferred, incentive or other compensation (above minimum salary or draw). _____ **(EMPLOYEE INITIALS)**

7.   **ARBITRATION**

7.1   Any controversy or claim arising out of or relating to (i) your employment by Morgan Stanley (excluding statutory employment claims and other claims covered by Paragraph 7.2), or (ii) this Agreement (or its breach), will be settled by arbitration before either the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE") in accordance with their respective rules, and judgment upon an award issued by the arbitrator(s) may be entered in any court having jurisdiction. Except as otherwise expressly agreed, any dispute as to the arbitrability of a particular issue or claim

pursuant to this arbitration provision is to be resolved in arbitration.  This paragraph will not be deemed a waiver of Morgan Stanley's right to injunctive or provisional relief from any court, as provided for in this Agreement. _____ **(EMPLOYEE INITIALS)**

7.2   Notwithstanding the arbitration requirement of paragraph 7.1 above, you agree that certain other claims (including, but not limited to, statutory discrimination and other statutory employment claims) must be submitted to Morgan Stanley's Alternate Dispute Resolution Program, "Convenient Access to Resolutions for Employees" ('CARE').  Claims required to be submitted to CARE are recited in the CARE Guidebook maintained by the CARE Program Administrator's Office and in the CARE Program explanatory brochure. _____ **(EMPLOYEE INITIALS)**

8.   **SUCCESSORS, ASSIGNS AND AFFILIATES**

The provisions, benefits and obligations of this Agreement will run to the successors, affiliates and assigns of Morgan Stanley. _____ **(EMPLOYEE INITIALS)**

9.   **GOVERNING LAW**

This Agreement will be governed by and construed in accordance with the laws of the state in which you signed this Agreement. _____ **(EMPLOYEE INITIALS)**

10.   **WAIVER**

Morgan Stanley's failure to enforce a breach of any covenant of this Agreement will not constitute a waiver of Morgan Stanley's right to enforce any other breach of the same or any other covenant. _____ **(EMPLOYEE INITIALS)**

11.   **SEVERABILITY**

11.1   If any provision or portion of any provision of this Agreement is, for any reason, adjudged to be void, invalid or unenforceable by an arbitrator or arbitration panel, a regulatory body, or a court of competent jurisdiction, the remainder of the Agreement will remain in full force and effect. _____ **(EMPLOYEE INITIALS)**

11.2   If any of the covenants, including but not limited to restrictive covenants, contained in this Agreement or any part thereof are held to be unreasonable and/or unenforceable, the parties agree that the court or arbitrator(s) making such determination shall have the power to revise such provision(s), so as to render such provision(s) reasonable and enforceable, upon which such provision(s) shall then be enforceable. _____ **(EMPLOYEE INITIALS)**

12.   **ATTORNEYS' FEES**

In the event of a breach of any of the terms of this Agreement by you, you agree to pay all fees and costs, including reasonable attorneys' fees incurred by Morgan Stanley in connection with the enforcement of this Agreement. _____ **(EMPLOYEE INITIALS)**

13.  **ENTIRE AGREEMENT**

This writing constitutes the entire agreement of the parties with respect to the subject matter recited in this Agreement.  This Agreement may be amended only by a writing signed by both you and Morgan Stanley. _____ **(EMPLOYEE INITIALS)**

14.  **EMPLOYEE REPRESENTATION**

You represent as follows:

I HAVE READ AND REVIEWED THIS EMPLOYMENT AGREEMENT IN ITS ENTIRETY.   I HAVE BEEN GIVEN AN OPPORTUNITY TO ASK MORGAN STANLEY QUESTIONS ABOUT IT.  I FULLY UNDERSTAND THE TERMS OF THIS DOCUMENT AND KNOWINGLY AND FREELY AGREE TO ABIDE BY THEM.  MY INITIALS FOLLOWING THE ABOVE PROVISIONS INDICATE THAT I HAVE READ THEM.   MY SIGNATURE BELOW INDICATES MY AGREEMENT TO ALL PROVISIONS HEREIN WHETHER OR NOT I HAVE INITIALED THEM.

Signed in the State of ____CA_____

_____          ___9/4/07_____
Employee's Signature                 Date

MORGAN STANLEY & CO. INCORPORATED

_____          ___9/4/07_____
Branch Manager's Signature         Date

ADDENDUM TO PARAGRAPH 3.2 OF
FINANCIAL ADVISOR EMPLOYMENT
AGREEMENT

1.     Paragraph 3.2 of the Agreement is hereby amended by adding the following at the end of said
paragraph:

> Notwithstanding anything to the contrary in this paragraph 3.2 upon
> termination of employment for any reason, Employee may solicit those
> customers whom he/she serviced as a securities broker-dealer registered
> representative prior to employment with Morgan Stanley, a listing of
> whom is attached to this Agreement as Exhibit "A". This exception to
> Paragraph 3.2 shall become effective only upon the payment by
> Employee of all sums owed to Morgan Stanley at the time of termination
> under any promissory note or agreement signed by Employee.

2.     This Addendum is confidential.  As a further term of the Agreement, Employee agrees that he will
not disclose the existence or terms of this Addendum to any persons or parties; provided, however
that this prohibition shall not apply to disclosures ( i ) to Employee's immediate family; ( ii ) to
Employee's attorneys and/or tax advisors; ( iii ) to requests initiated by any state or federal
regulatory agency or securities industry self-regulatory organization; or ( iv ) in response to a
validly issued subpoena or court order.  Any individuals to whom Employee makes any disclosure
in accordance with items ( i ) and/or ( ii ) of this paragraph shall be advised by Employee of this
confidentiality provision prior to any such disclosure, and shall agree thereafter to be bound by this
confidentiality provision.  Prior to making any disclosure in accordance with items ( iii ) and/or ( iv )
of this paragraph, Employee shall provide his/her District Manager with notice of the request,
subpoena or court order, so that Morgan Stanley may have the opportunity to answer, object or
otherwise respond to it.


_____        _____
Employee's Signature                               Date   9/4/07


MORGAN STANLEY & CO. INCORPORATED

By: _____        _____
        Branch Manager                                 Date   9/4/07


By: _____        _____
        District Manager                                 Date

# EXHIBIT B

MORGAN STANLEY & CO. INCORPORATED                    BONUS AGREEMENT

This Agreement is made on August 30, 2007, by and between Morgan Stanley & Co. Incorporated. ("Morgan
Stanley"), a Delaware Corporation, and ___DAVID COUCH___ ("Employee").

    WHEREAS, Morgan Stanley and Employee believe it mutually advantageous to provide for the payment of
bonuses to Employee in consideration of Employee's continued services on behalf of Morgan Stanley;

    NOW THEREFORE, the parties hereto agree as follows:

1.  Subject to the other provisions of this Agreement, Morgan Stanley agrees to pay to Employee the following
bonuses  on each of the following dates:

|  |  |
|---|---|
| $82,826.49 on September 12, 2008 | |
| $79,873.42 on September 12, 2009 | |
| $76,920.36 on September 12, 2010 | |
| $73,967.29 on September 12, 2011 | |
| $71,014.22 on September 12, 2012 | |
| $68,061.16 on September 12, 2013 | |
| $65,108.09 on September 12, 2014 | |
| $62,155.02 on September 12, 2015 | |
| $59,201.96 on September 12, 2016 | |

TOTAL          $639,128.00

All bonuses hereunder shall be subject to withholding of applicable Federal, state and local income taxes, as well as
FICA, and all other employment taxes required by law to be withheld.  Said bonuses shall not be eligible for
computation of benefits or compensation under any Morgan Stanley compensation or benefits plans.

2.   No unpaid bonus shall be, or become, due and payable hereunder unless (a) Employee is continuously in the employ of Morgan Stanley from the date hereof to and including the date such bonus is due and payable according to the schedule contained in Paragraph 1 above (provided, however that in the event of the death of the Employee, all bonuses shall be accelerated and become due and payable as of the date of such Employee's death); and (b) Employee has obtained and retained all licenses and registrations from the NASD, exchanges, state securities commissions and other regulatory bodies as Morgan Stanley shall determine necessary in order to conduct securities or futures transactions

3.   This Agreement and any bonus payable hereunder shall not be subject to option or assignable either by voluntary or involuntary assignment or by operation of law including (without limitation) bankruptcy, garnishment, attachment or other creditors' process, provided however that the provisions of this Paragraph 3 shall not apply to any affiliate or subsidiary of Morgan Stanley.

4.   This Agreement contains the entire agreement between the parties relating to bonuses to be paid Employee hereunder and cannot be altered or amended except by a written agreement executed by the parities.

5.   Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in the City of
Bakersfield_____, in the State of_ CA_____ on the date first hereinabove written.

EMPLOYEE

_____        9/4/07
Signature                    Date

MORGAN STANLEY & CO INCORPORATED.

_____        9/4/07
Branch Manager               Date

_____        _____
District Manager             Date

# EXHIBIT C

MORGAN STANLEY & CO. INCORPORATED                    PROMISSORY NOTE

$506,240.00        _Bakersfield CA_____        August 30, 2007
( AMOUNT)              (CITY AND STATE)               (DATE)

FOR VALUE RECEIVED, the undersigned ("Employee") promises to pay to Morgan Stanley & Co. Incorporated

("Morgan Stanley"), a Delaware Corporation, at (branch address)

_5601 Truxtun Ave #150_ , the principal sum of five hundred six thousand two hundred

forty dollars and zero cents ($506,240.00) with interest on any unpaid balance thereof at the higher rate of 5.25%

per annum or the applicable Federal Rate on the balance remaining from time to time unpaid.  Payments of principal

and interest shall be due and payable in the amounts and on the dates provided for hereafter.  Accrued interest shall

be due and payable at the same time that principal installments are due and payable.  Payment of principal shall be

$56,248.89 on August 30, 2008

$56,248.89 on August 30, 2009

$56,248.89 on August 30, 2010

$56,248.89 on August 30, 2011

$56,248.89 on August 30, 2012

$56,248.89 on August 30, 2013

$56,248.89 on August 30, 2014

$56,248.89 on August 30, 2015

$56,248.89 on August 30, 2016

Morgan Stanley shall declare this Note immediately due and payable, without notice or demand, if (i) the

Employee dies while employed by Morgan Stanley or if the Employee's employment with Morgan Stanley

terminates voluntarily or is terminated by Morgan Stanley for any reason whatsoever prior to the due date of any

payment under this Note, (ii) the Employee has not obtained and retained all licenses and registrations from the

NASD, exchanges, state securities commissions and other regulatory bodies as Morgan Stanley shall determine

necessary in order to conduct securities or commodities transactions or (iii) at any time, in the sole opinion of

Morgan Stanley, the financial responsibility of the Employee has become impaired, such impairment to include, without limiting the generality of the foregoing, the filing of a voluntary or involuntary petition under any provision of any Federal or State bankruptcy or similar laws any assignment for the benefit of creditors; the entry of judgment or issuance of an order of attachment or garnishment; or the commencement of any proceeding or procedure for enforcement of a money judgment. The Employee hereby waives presentment, demand, protest or notice of any kind in connection with this Note.

Privilege is reserved to prepay at any time without premium or fee all or any portion of the unpaid principal and accrued interest.

The undersigned understands and agrees that in the event of default in any payment or a portion of any payment due hereunder not cured within fifteen days, Morgan Stanley shall have the right, without notice, to withhold from any and all amounts payable, due or held in an account for the undersigned, as compensation or otherwise, amount(s) equal to any payment(s) in default hereunder and to apply such withheld amounts to the indebtedness hereunder.

The undersigned shall reimburse Morgan Stanley for any and all damages losses, costs and expenses (including attorneys' fees) incurred or sustained by Morgan Stanley as a result of the breach by the undersigned of any of the terms of this Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, the remaining provisions of this Note shall be deemed to be valid and fully effective.

This Note is not a contract of employment for any period of time. Employee's employment with Morgan Stanley is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the National Association of Securities Dealers, Inc. and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

EMPLOYEE

_____          9/4/07
Signature                                Date

# EXHIBIT D

**2007 Recruit Cover Sheet**

| | |
|---|---|
| **Name:** | **David Couch** |
| **Title:** | FVP |
| **Hire Date:** | 8/30/2007 |
| **Prior Firm  & DOH:** | Smith Barney 7/95 |
| **Number of Firms in Last 10 Years:** | 1 |
| **LOE:** | 9/17/1988 |
| **Recruiter Used:** | Yes    Alex Fuhrer |
| **Trailing 12:** | $358,000 |
| **Assets:** | $60,000,000 |
| **Business Mix:** | 4% Equities, 13.1% MFs, 3.6% FID, 16.5% Insurance & Annuities, 58.9% Wrap, 2.3% Other |
| **Deal:** | 140/25/25/25 |
| **Upfront Bonus Amount:** | $506,240 |
| **Stock Component:** | $0 |

| | | |
|---|---|---|
| **Production Bonus Yr 1:** | 15% | IF TEAM  Production is $ 1,695,000 |
| **Production Bonus Yr 2:** | 15% | IF TEAM Production is $ 2,034,000 |
| **Production Bonus Yr 3:** | 15% | IF TEAM Production is $ 2,486,000 |
| **Asset Bonus Yr 1:** | 10% | IF TEAM Assets are $285,000,000 |
| **Asset Bonus Yr 2:** | 10% | IF TEAM Assets are $342,000,000 |
| **Asset Bonus Yr 3:** | 10% | IF TEAM Assets are $418,000,000 |

| | |
|---|---|
| **Division/Office:** | Western/117 - BAKERSFIELD, CA |
| **Branch Manager:** | Rachell Fanucchi |
| **Comments:** | Buena Vista Group. Came with Lance Horton and Bradley Barnes. Team deal, team backend. |

**EXHIBIT E**

MORGAN STANLEY & CO. INCORPORATED                    PROMISSORY NOTE

$43,228.53     Bakersfield CA            December 11, 2008
( AMOUNT )         (CITY AND STATE)                        (DATE)

FOR VALUE RECEIVED, the undersigned ("Employee") promises to pay to Morgan Stanley & Co. Incorporated ("Morgan Stanley"), a Delaware Corporation, at (branch address) Bakersfield, CA the principal sum of forty-three thousand two hundred twenty-eight dollars and fifty-three cents ($43,228.53) with interest on any unpaid balance thereof at the higher rate of 3% per annum or the applicable Federal Rate on the balance remaining from time to time unpaid. Payments of principal and interest shall be due and payable in the amounts and on the dates provided for hereafter. Accrued interest shall be due and payable at the same time that principal installments are due and payable. Payment of principal shall be made as follows:

$5,403.57 on December 11, 2009
$5,403.57 on December 11, 2010
$5,403.57 on December 11, 2011
$5,403.57 on December 11, 2012
$5,403.57 on December 11, 2013
$5,403.57 on December 11, 2014
$5,403.57 on December 11, 2015
$5,403.57 on December 11, 2016

Morgan Stanley shall declare this Note immediately due and payable, without notice or demand, if (i) the Employee dies while employed by Morgan Stanley or if the Employee's employment with Morgan Stanley terminates voluntarily or is terminated by Morgan Stanley for any reason whatsoever prior to the due date of any payment under this Note, (ii) the Employee has not obtained and retained all licenses and registrations from the FINRA, exchanges, state securities commissions and other regulatory bodies as Morgan Stanley shall determine necessary in order to conduct securities or commodities transactions or (iii) at any time, in the sole opinion of Morgan Stanley, the financial responsibility of the Employee has become impaired, such impairment to include, without limiting the generality of the foregoing, the filing of a voluntary or involuntary petition under any provision of any Federal or State bankruptcy or similar laws any assignment for the benefit of creditors; the entry of judgment or issuance of an order of attachment or garnishment; or the commencement of any proceeding or procedure for enforcement of a money judgment. The Employee hereby waives presentment, demand, protest or notice of any kind in connection with this Note.

Privilege is reserved to prepay at any time without premium or fee all or any portion of the unpaid principal and accrued interest.

The undersigned understands and agrees that in the event of default in any payment or a portion of any payment due hereunder not cured within fifteen days, Morgan Stanley shall have the right, without notice, to withhold from any and all amounts payable, due or held in an account for the undersigned, as compensation or otherwise, amount(s) equal to any payment(s) in default hereunder and to apply such withheld amounts to the indebtedness hereunder.

The undersigned shall reimburse Morgan Stanley for any and all damages losses, costs and expenses (including attorneys' fees) incurred or sustained by Morgan Stanley as a result of the breach by the undersigned of any of the terms of this Note.

The provisions of this Note shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, the remaining provisions of this Note shall be deemed to be valid and fully effective.

This Note is not a contract of employment for any period of time. Employee's employment with Morgan Stanley is on an at-will basis and nothing herein shall be construed as a contract of employment for a definite term.

Any controversy or claim arising out of or relating to this Note shall be settled by arbitration in accordance with the rules of the Financial Industry Regulatory Authority and judgment upon the award entered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

EMPLOYEE

_____          12/12/08
Signature                                         Date

**EXHIBIT F**

# Morgan Stanley

**Memorandum**

## Legal and Compliance Division

| | | | |
|---|---|---|---|
| **To:** | Rachell Fanucchi, Branch Manager, David Couch<br>Bakersfield, CA 117 Office | **Date:** | June 15, 2007 |
| | | **Cc:** | Robert Shearer<br>Brad Saunders |
| **From:** | Lauren Marino, Compliance Associate | | Myrna Antonsanti |
| **Subject:** | Outside Activity Request - David Couch (1) Serving as a Member of the Bakersfield City, California, City Council; and (2) Running for and Potentially Serving as a Member of the Kern County, California Board of Supervisors | | |

As per the summary of practical suggestions provided by counsel, below are the guidelines related to this activity:

1) Rachell Fanucchi is appointed to supervise Mr. Couch's conduct and ensure that he complies with the following advice.
2) If Mr. Couch decides to run for office (including City Council or County Supervisor):
   a. Prohibit any contribution from MS, its PAC, or its employees who qualify as MFPs under Rule G-37, to Mr. Couch's campaign;
   b. Prohibit Mr. Couch from using MS facilities, e.g. office space, supplies, computers, copiers, fax machines, postage, and telephones, or employee services, including the use of his secretary, to benefit his campaign;
   c. Prohibit Mr. Couch and other employees from working on Mr. Couch's campaign during their working hours (this, however, does not restrict the ability of Mr. Couch or any other MS employee to engage in volunteer activity for a campaign on his or her own non-working time);
   d. Not grant Mr. Couch or any other employee a paid leave of absence to work on his campaign, except earned vacation time; and
   e. If Mr. Couch takes an unpaid leave of absence to work on his campaign, get promptly reimbursed by Mr. Couch or his campaign for any benefits, e.g., insurance, provided by MS to Mr. Couch during that leave;
3) If a matter involving MS comes before the City Council (or the County Board of Supervisors, should Mr. Couch be elected), require Mr. Couch to disclose to the City Council (or to the Board of Supervisors) his relationship with MS and require him to recuse himself from voting or otherwise participating in that decision (other than general policy decisions that affect MS merely as a member of the public or an industry);
4) In the event of recusal from a City Council vote, require Mr. Couch to indicate the cause of the conflict and request the City Clerk to record his abstention from the vote on any item/s on the consent calendar;

5) In the event that Mr. Couch's recusal from matters involving MS occurs on a continuing and pervasive basis, require Mr. Couch to resign from his employment with MS;

6) Prohibit Mr. Couch from participating in MS's efforts to get business or on other matters involving MS before the City (or County);

7) If Mr. Couch is not an officer of MS, then MS may enter into a contract with the City (or County) during Mr. Couch's tenure as a member of the City Council (or as a member of the County Board of Supervisors) only if: (1) such contract is ratified by the City Council (or the County Board of Supervisors) without Mr. Couch's vote; and (2) Mr. Couch has been employed by MS for at least three years prior to accepting office as member of the City Council (or the County Board of Supervisors); and

8) Ensure that Mr. Couch properly files his financial disclosure statement annually with the appropriate authorities.

In addition to the above stipulations provided by outside counsel, the following conditions also apply:

1) Mr. Couch must advise the Compliance Department in writing, immediately, of any material change in his position.

2) Mr. Couch's participation is with the consent only and not at the Firm's direction or request. Mr. Couch may not hold himself out to be, or appear to be, acting directly or indirectly on behalf of Morgan Stanley.

3) Morgan Stanley will not provide indemnification or insurance coverage for claims that may arise due to activities with his relationship with the activity.

4) Mr. Couch may not discuss specific investment opportunities or render specific investment advice on behalf of the organization without prior approval from Compliance.

5) Mr. Couch may not imply or express that he is acting as a representative of Morgan Stanley. Mr. Couch may not use Morgan Stanley's name and/or facilities (phones, fax, address, office space, e-mail, etc.) in connection with the activities. There may be no e-mail or internet link to Morgan Stanley.

6) Mr. Couch may not directly or indirectly solicit political contributions from Morgan Stanley clients or certain Morgan Stanley employees, including municipal finance professionals.

**I certify that I have read and will comply with the above summary of practical suggestions.**

 

_____                           _____

David Couch                                                                      Date

**I certify that I have read and will supervise Mr. Couch's conduct and ensure he complies with the above summary of practical suggestions.**

 

_____                           _____

Branch Manager Signature (Rachell Fanucchi)                  Date

**Please sign and return a copy of this memorandum to my attention at 212-507-8293.**

**EXHIBIT G**

LETTERHEAD OF ORGANIZATION

Dear XXX

This letter relates to [Name of Employee] position with [Name of Governmental Entity] (the "Organization"). The Organization is aware that [Name of Employee] is employed by Morgan Stanley Smith Barney, LLC. The Organization does not believe there is any conflict with respect to [Name of Employee] serving as [Title of Governmental Position] while employed by Morgan Stanley Smith Barney, LLC. The Organization further understands that Morgan Stanley Smith Barney, LLC and its affiliates may now, or may in the future do business with the Organization and its affiliates. The Organization is aware of no law, rule, regulation or policy that would preclude Morgan Stanley Smith Barney or its affiliates from doing business with the Organization and its affiliates as a result of [Name of Employee] position.


_____
Signature

_____
Name of Authorized Individual

# EXHIBIT H

# FORM U5
## UNIFORM TERMINATION NOTICE FOR SECURITIES INDUSTRY REGISTRATION

| U5 - FULL 02/12/2013 | Rev. Form U5 (05/2009) |
|---|---|

**Individual Name: COUCH, DAVID RAY (1868761)**

**Firm Name: MORGAN STANLEY (149777)**

### NOTICE TO THE INDIVIDUAL WHO IS THE SUBJECT OF THIS FILING

*Even if you are no longer registered you continue to be subject to the jurisdiction of regulators for at least two years after your registration is terminated and may have to provide information about your activities while associated with this firm. Therefore, you must forward any residential address changes for two years following your termination date or last Form U5 amendment to: CRD Address Changes, P.O. Box 9495, Gaithersburg, MD 20898-9495.*

### 1. GENERAL INFORMATION

| First Name: | Middle Name: | Last Name: | Suffix: |
|---|---|---|---|
| DAVID | RAY | COUCH | |

| *Firm* CRD #: | *Firm* Name: | *Firm* NFA #: | |
|---|---|---|---|
| 149777 | MORGAN STANLEY | | |

| *Individual CRD #:* | Individual SSN: | Individual NFA #: | Firm Billing Code: |
|---|---|---|---|
| 1868761 | ███████ | | 100117 |

**Office of Employment Address**

| CRD Branch # | NYSE Branch Code # | Firm Billing Code | Address | Private Residence | Type of Office | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 408232 | 100117 | 100117 | 5601 TRUXTUN AVE. #150 BAKERSFIELD , CA 93309 UNITED STATES | N | Located At | 06/01/2009 | 01/15/2013 |

### 2. CURRENT RESIDENTIAL ADDRESS

#### NOTICE TO THE FIRM

*This is the last reported residential address. If this is not current, please enter the current residential address.*

| From | To | Street | City | State | Country | Postal Code |
|---|---|---|---|---|---|---|
| 01/2005 | PRESENT | ███████████ | ██████ | ██ | | ████ |

### 3. FULL TERMINATION

**Is this a *FULL TERMINATION*?** ⦿ Yes ○ No
Note: A "Yes" response will terminate ALL registrations with all *SROs* and all *jurisdictions*.

**Reason for Termination:** Other

**Termination Explanation:**
If the Reason for Termination entered above is Permitted to Resign, Discharged or Other, provide an explanation below:

SEPARATION FROM THE FIRM IN LIGHT OF INDIVIDUAL'S COUNTY SUPERVISOR POSITION

---

### 4. DATE OF TERMINATION

**Date Terminated (MM/DD/YYYY):** 01/15/2013
A complete date of termination is required for *full termination*. This date represents the date the *firm* terminated the individual's association with the *firm* in a capacity for which registration is required.

For *partial termination*, the date of termination is only applicable to post-dated termination requests during the renewal period.

Notes: For *full termination*, this date is used by *jurisdictions/SROs* to determine whether an individual is required to requalify by examination or obtain an appropriate waiver upon reassociating with another *firm*.

The *SRO/jurisdiction* determines the effective date of termination of registration.

---

### 6. AFFILIATED FIRM TERMINATION

No Information Filed

### 7. DISCLOSURE QUESTIONS

**IF THE ANSWER TO ANY OF THE FOLLOWING QUESTIONS IN SECTION 7 IS 'YES', COMPLETE DETAILS OF ALL EVENTS OR PROCEEDINGS ON APPROPRIATE DRP(S). IF THE INFORMATION IN SECTION 7 HAS ALREADY BEEN REPORTED ON FORM U4 OR FORM U5, DO NOT RESUBMIT DRPs FOR THESE ITEMS. REFER TO THE EXPLANATION OF TERMS SECTION OF FORM U5 INSTRUCTIONS FOR EXPLANATION OF ITALICIZED WORDS.**

**Disclosure Certification Checkbox (optional):** ☑

By selecting the Disclosure Certification Checkbox, the firm certifies that (1) there is no additional information to be reported at this time; (2) details relating to Questions 7A, 7C, 7D and 7E have been previously reported on behalf of the individual via Form U4 and/or amendments to Form U4 (if applicable); and (3) updated information will be provided, if needed, as it becomes available to

the firm.  Note: Use of "Disclosure Certification Checkbox" is optional.

## Investigation Disclosure

**YES NO**

**7A.** Currently is, or at termination was, the individual the subject of an *investigation* or ○ ○
*proceeding* by a domestic or foreign governmental body or *self-regulatory
organization* with jurisdiction over *investment-related* businesses? (Note: Provide
details of an *investigation* on an Investigation Disclosure Reporting Page and details
regarding a *proceeding* on a Regulatory Action Disclosure Reporting Page.)

## Internal Review Disclosure

**YES NO**

**7B.** Currently is, or at termination was, the individual under internal review for fraud or ○ ○
wrongful taking of property, or violating *investment-related* statutes, regulations,
rules or industry standards of conduct?

## Criminal Disclosure

**YES NO**

**7C.** While employed by or associated with your *firm*, or in connection with events that
occurred while the individual was employed by or associated with your *firm*, was
the individual:

   **1.** convicted of or did the individual plead guilty or nolo contendere ("no ○ ○
contest") in a domestic, foreign or military court to any *felony*?

   **2.** *charged* with any *felony*? ○ ○

   **3.** convicted of or did the individual plead guilty or nolo contendere ("no ○ ○
contest") in a domestic, foreign or military court to a *misdemeanor involving*:
investments or an *investment-related* business, or any fraud, false statements
or omissions, wrongful taking of property, bribery, perjury, forgery,
counterfeiting, extortion, or a conspiracy to commit any of these offenses?

   **4.** *charged* with a *misdemeanor* specified in 7(C)(3)? ○ ○

## Regulatory Action Disclosure

**YES NO**

**7D.** While employed by or associated with your *firm*, or in connection with events that ○ ○
occurred while the individual was employed by or associated with your *firm*, was
the individual *involved* in any *disciplinary action* by a domestic or foreign
governmental body or *self-regulatory organization* (other than those designated as
a "*minor rule violation*" under a plan approved by the U.S. Securities and Exchange
Commission) with jurisdiction over the *investment-related* businesses?

## Customer Complaint/Arbitration/Civil Litigation Disclosure

**YES NO**

**7E.** 1.   In connection with events that occurred while the individual was employed by

or associated with your *firm*, was the individual <u>named</u> as a
respondent/defendant in an *investment-related*, consumer-initiated arbitration
or civil litigation which alleged that the individual was *involved* in one or more
*sales practice violations* and which:

**(a)**  is still pending, or;                               ○   ○

**(b)**  resulted in an arbitration award or civil judgment against the individual,   ○   ○
regardless of amount, or;

**(c)**  was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;   ○   ○

**(d)**  was settled, on or after 05/18/2009, for an amount of $15,000 or more?   ○   ○

2.  In connection with events that occurred while the individual was employed by
or associated with your *firm*, was the individual the subject of an *investment-
related*, consumer-initiated (written or oral) complaint, which alleged that the
individual was *involved* in one or more *sales practice violations*, and which

**(a)**  was settled, prior to 05/18/2009, for an amount of $10,000 or more, or;   ○   ○

**(b)**  was settled, on or after 05/18/2009, for an amount of $15,000 or more?   ○   ○

3.  In connection with events that occurred while the individual was employed by
or associated with your *firm*, was the individual the subject of an *investment-
related*, consumer-initiated, written complaint, not otherwise reported under
questions 7(E)(2) above, which:

**(a)**  would be reportable under question 14I(3)(a) on Form U4, if the   ○   ○
individual were still employed by your *firm*, but which has not previously
been reported on the individual's Form U4 by your *firm*; or

**(b)**  would be reportable under question 14I(3)(b) on Form U4, if the   ○   ○
individual were still employed by your *firm*, but which has not previously
been reported on the individual's Form U4 by your *firm*.

**Answer questions (4) and (5) below only for arbitration claims or civil
litigation filed on or after 05/18/2009**

4.  In connection with events that occurred while the individual was employed by
or associated with your *firm*, was the individual the subject of an *investment-
related*, consumer-initiated, arbitration claim or civil litigation which alleged
that the individual was *involved* in one or more *sales practice violations*, and
which:

**(a)**  was settled for an amount of $15,000 or more, or;   ○   ○

**(b)**  resulted in an arbitration award of civil judgment against any named   ○   ○
respondent(s)/defendant(s), regardless of amount?

5.  In connection with events that occurred while the individual was employed by
or associated with your *firm*, was the individual the subject of an *investment-
related*, consumer-initiated, arbitration claim or civil litigation not otherwise
reported under question 7E(4) above, which:

**(a)**  would be reportable under question 14I(5)(a) on Form U4, if the   ○   ○
individual were still employed by your *firm*, but which has not previously

been reported on the individual's Form U4 by your *firm*; or

**(b)** would be reportable under question 14I(5)(b) on Form U4, if the individual were still employed by your *firm*, but which has not previously been reported on the individual's Form U4 by your *firm*.

### Termination Disclosure

**YES NO**

**7F.** Did the individual voluntarily *resign* from your *firm*, or was the individual discharged or permitted to *resign* from your *firm*, after allegations were made that accused the individual of:

**1.** violating *investment-related* statutes, regulations, rules or industry standards of conduct?   ○ ○

**2.** fraud or the wrongful taking of property?   ○ ○

**3.** failure to supervise in connection with *investment-related* statutes, regulations, rules or industry standards of conduct?   ○ ○

---

### 8. SIGNATURE

Please Read Carefully

All signatures required on this Form U5 filing must be made in this section.

A "Signature" includes a manual signature or an electronically transmitted equivalent. For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature.

**8A.** FIRM ACKNOWLEDGMENT
This section must be completed on all U5 form filings submitted by the *firm*.

INDIVIDUAL ACKNOWLEDGMENT AND CONSENT

**8B.** This section must be completed on amendment U5 form filings where the individual is submitting changes to Part II of the INTERNAL REVIEW DRP or changes to Section 2 (CURRENT RESIDENTIAL ADDRESS).

### 8A. FIRM ACKNOWLEDGMENT

I VERIFY THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED IN AND WITH THIS FORM.

Person to contact for further information
SONIA BANERJI

Telephone # of person to contact
415-693-6347

Signature of *Appropriate Signatory*
SHAUNA MYERS

Date (MM/DD/YYYY)
02/12/2013

Signature

---

### CRIMINAL DRP

No Information Filed

---

## CERTIFICATE OF SERVICE

I, Patricia K. Oliver, an attorney, certify that on May 9, 2014, I served the above and foregoing **FIRST AMENDED COMPLAINT**, by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the 9th day o.

Mary C. Dollarhide, Esq.
Haley M. Morrison, Esq.
PAUL HASTINGS, LLP
4747 Executive Drive, 12th Floor
San Diego, CA  92121
Telephone:  (858) 458-3000
Facsimile:  (858) 458-3005
marydollarhide@paulhastings.com
haleymorrison@paulhastings.com


/s/ *Patricia K. Oliver*          .
Patricia K. Oliver